OHIO PYRO, INC., ET AL., APPELLEES, *v.* OHIO DEPARTMENT OF COMMERCE, DIVISION OF STATE FIRE MARSHAL, ET AL., APPELLANTS.

[Cite as *Ohio Pyro, Inc. v. Ohio Dept. of Commerce,* 115 Ohio St.3d 375, 2007-Ohio-5024.]

(No. 2006-0785—Submitted May 2, 2007—Decided October 3, 2007.)

O'CONNOR, J.

{¶ 1} This appeal implicates the "collateral attack" doctrine, which disfavors the authority of one court to revisit a judgment of another court, in another proceeding, in other than very limited circumstances. For the reasons that follow, we determine that this case amounts to an impermissible collateral attack on a prior valid judgment. We reverse the judgment of the court of appeals.

### Relevant Background

{¶ 2} On June 27, 1997, defendant-appellant Safety 4th Fireworks, Inc. ("Safety 4th")[1] faxed an application letter to defendant-appellant, Ohio Department of Commerce, Division of State Fire Marshal ("Fire Marshal"), seeking permission to relocate three of its wholesale fireworks licenses. As a branch of the state's Department of Commerce, the Fire Marshal strictly regulates the fireworks industry in Ohio under the authority of R.C. 3737.22(A)(14), principally through administration and enforcement of the provisions of R.C. Chapter 3743. Fireworks wholesalers operate under annual licenses issued by the Fire Marshal. In order to obtain a license, or to relocate a particular license, a wholesaler must obtain the permission of the Fire Marshal and must comply with all relevant statutory and additional requirements.

{¶ 3} After the Fire Marshal failed to approve Safety 4th's relocation request, Safety 4th sued the Fire Marshal in 1999 in the Jefferson County Court of Common Pleas. The key point of dispute concerned a moratorium on requests

---

1. The application indicated that Safety 4th was doing business under a number of names, including as defendant-appellant Liberty Fireworks, Inc. We use "Safety 4th" to refer to both Safety 4th and Liberty Fireworks.

for the issuance of wholesaler licenses, which had been in effect in some form since the mid–1980s. Prior to 2001, the moratorium was contained in legislation that was never codified in the Revised Code. See, e.g., Section 29, Sub.H.B. No. 670, 146 Ohio Laws, Part IV, 6440, 6866, effective December 2, 1996; Section 165, Am.Sub.H.B. No. 215, 147 Ohio Laws, Part I, 909, 2197, effective June 30, 1997; Section 4, Sub.H.B. No. 204, 148 Ohio Laws, Part I, 1338, 1341, effective November 16, 1999. This moratorium has since been codified at R.C. 3743.75. See Sub.H.B. No. 161, 149 Ohio Laws, Part III, 5758, 5821–5822, effective June 29, 2001.

{¶ 4} In the 1999 lawsuit, Safety 4th in essence argued that a window existed in the moratorium allowing for the relocation of licenses prior to the effective date of Section 165 of Am.Sub.H.B. No. 215 (June 30, 1997), and that its application for relocation, dated June 27, 1997, preceded that date. Safety 4th sought a declaratory judgment that it was entitled to relocate licenses pursuant to the law that was in effect on June 27, 1997; a declaratory judgment that Am.Sub.H.B. No. 215 was unconstitutional for violating the one-subject rule of Section 15(D), Article II, of the Ohio Constitution; and a writ of mandamus to compel the Fire Marshal to approve the relocations.

{¶ 5} Several companies attempted to intervene in late 1999 in Safety 4th's Jefferson County action, but the trial court denied all motions to intervene. Among those that attempted to intervene was the plaintiff-appellee in the instant action, Ohio Pyro, Inc., a wholesale fireworks company and a competitor of Safety 4th. Ohio Pyro sought intervention in order to argue that moratorium restrictions applied to Safety 4th's application. Ohio Pyro did not appeal from the denial of its motion to intervene.

{¶ 6} Safety 4th and the Fire Marshal eventually reached an agreement to settle the litigation. On June 6, 2001, the Jefferson County Court of Common Pleas journalized an agreed order submitted by the parties "as a full and final settlement of any and all claims." This order dismissed the complaint with prejudice. Paragraph 1 of the order provided, "Defendant will consider Plaintiffs' requests for transfer * * * to any political subdivision in the State of Ohio as if perfected on June 27, 1997 provided all provisions of this Agreed Order are met and further provided that there is compliance with all other applicable rules and regulations. * * * If, at the conclusion of such consideration, Defendant should find that all conditions and requirements have been met, then transfer shall be approved and deemed effective as of June 27, 1997."

{¶ 7} The order also specified a number of conditions Safety 4th was required to meet before approval would be granted, including compliance with all applicable laws and safety regulations (for example, regarding matters such as sprinkler systems, building codes, zoning, and set-back requirements). The order also

placed additional obligations on the Fire Marshal, such as conducting inspections and performing other duties relevant to the license transfer in a timely manner.

{¶ 8} Acting in reliance on the agreed order, Safety 4th selected a location in Fayette County, purchased real estate at the site, erected a building, and took other significant steps toward gaining final approval from the Fire Marshal regarding the new site.

{¶ 9} On April 7, 2004, Ohio Pyro initiated the present case by filing a complaint in the Fayette County Court of Common Pleas.[2] In its complaint, Ohio Pyro alleged that it had learned that Safety 4th was relocating to Fayette County, and that Ohio Pyro was pursuing injunctive relief as its "only opportunity" to preclude the Fire Marshal from approving that and other relocations. Ohio Pyro further alleged that in the 2001 settlement in Jefferson County, the Fire Marshal had "agreed to perform acts that are outside of his statutory authority" and that "contravene the express intent of Ohio's legislature."

{¶ 10} Ohio Pyro sought a declaratory judgment and preliminary and permanent injunctions to protect its market share as "the only company that is presently licensed to operate wholesale fireworks showrooms at any location in Fayette County," and requested that the court determine the "rights, status, and other legal relations" of and among Ohio Pyro, the Fire Marshal, and Safety 4th. Ohio Pyro asserted that it relies on the fireworks moratorium to conduct its business and that it would suffer "diminished revenues, reduced profits, and lost market share" if another fireworks wholesaler were allowed to operate in Fayette County.

{¶ 11} On May 19, 2004, after a hearing that lasted several days, the Fayette County Court of Common Pleas granted Ohio Pyro's request for a preliminary injunction, restraining the Fire Marshal from approving the transfers of any licenses held by Safety 4th " 'to any political subdivision in the state of Ohio * * *' other than to another location within the political subdivision in which each license is currently located" pending further proceedings.

{¶ 12} In motions to dismiss, the Fire Marshal and Safety 4th[3] each argued that Ohio Pyro's suit conflicted with, and constituted an impermissible collateral attack on, the judgment that had been issued by the Jefferson County Court of Common Pleas in 2001, in which that court approved the settlement agreement entered into by the Fire Marshal and Safety 4th.

---

2. The trial court later granted the motion to intervene of another plaintiff, West Salem Fireworks, Inc. Because the interests of that party are identical to those of Ohio Pyro, we use "Ohio Pyro" to refer to both parties.

3. Safety 4th was added as a defendant by an entry of the trial court dated May 24, 2004.

{¶ 13} Ohio Pyro later moved for summary judgment, and the Fire Marshal responded by filing a cross-motion for summary judgment.[4] On February 1, 2005, the trial court denied the motions to dismiss, with no specific explanation, and granted Ohio Pyro's motion for summary judgment. The court made permanent its earlier preliminary injunction on the same terms, forbidding the Fire Marshal from approving Safety 4th's relocation to Fayette County or to any other location not within the same political subdivision where each license was already located.[5]

{¶ 14} The Twelfth District Court of Appeals affirmed the judgment of the trial court, stating, "After reviewing the record, we cannot agree with appellants' position that the trial court's assumption of jurisdiction over the action seeking declaratory judgment and injunctive relief constitutes a collateral attack on the Jefferson County judgment." *Ohio Pyro, Inc. v. Ohio Dept. of Commerce, Div. of State Fire Marshal*, Fayette App. Nos. CA2005–03–009 and CA2005–03–011, 2006-Ohio-1002, 2006 WL 522457, ¶ 13. Furthermore, the court of appeals held that an injunction was appropriate because Ohio Pyro had established irreparable harm and had no adequate remedy at law. Id. at ¶ 29. Finally, the court of appeals held that a justiciable controversy between the parties exists. Id. at ¶ 35.

{¶ 15} Both the Fire Marshal and Safety 4th appealed to this court, and we accepted jurisdiction to consider whether the trial court's decision in this case amounted to the endorsement of an improper collateral attack on a different court's previous judgment. 110 Ohio St.3d 1437, 2006-Ohio-3862, 852 N.E.2d 187.

## Analysis

{¶ 16} This court has described a collateral attack as " 'an attempt to defeat the operation of a judgment, in a proceeding where some new right derived from or through the judgment is involved.' " *Fawn Lake Apts. v. Cuyahoga Cty. Bd. of Revision* (1999), 85 Ohio St.3d 609, 611, 710 N.E.2d 681, quoting *Kingsborough v. Tousley* (1897), 56 Ohio St. 450, 458, 47 N.E. 541.

---

4. Before the trial court ruled on the parties' summary judgment motions, the Jefferson County Court of Common Pleas, on November 12, 2004, issued an entry at Safety 4th's request specifically ordering the Fire Marshal to issue Safety 4th a license to operate at the Fayette County location. The Jefferson County Court of Common Pleas supported its ruling by stating that "this court has assumed jurisdiction to the exclusion of the Fayette County Common Pleas Court."

5. After the trial court in this case issued its final decision and while the appeal was pending in the Twelfth District Court of Appeals, the Jefferson County Court of Common Pleas, on June 30, 2005, held the Fire Marshal in contempt for failing to approve the transfer to the Fayette County location and for failing to issue a license to Safety 4th to operate at that location, and imposed a fine for the contempt, with the fine stayed pending an appeal. The parties agree that that contempt order is currently on appeal to the Seventh District Court of Appeals, and that the appellate court has stayed its consideration pending the resolution by this court of the instant appeal.

{¶ 17} Black's Law Dictionary (8th Ed.2004) 278 defines "collateral attack" as "[a]n attack on a judgment in a proceeding other than a direct appeal; esp., an attempt to undermine a judgment through a judicial proceeding in which the ground of the proceeding (or a defense in the proceeding) is that the judgment is ineffective. ● A petition for a writ of habeas corpus is one type of collateral attack.—Also termed *indirect attack*. Cf. Direct Attack (1)."

{¶ 18} A "direct attack" is "[a]n attack on a judgment made in the same proceeding as the one in which the judgment was entered; specif., the taking of proceedings in the action in which a judgment has been rendered to have the judgment vacated or reversed or modified by appropriate proceedings in either the trial court or an appellate court. ● Examples of direct attacks are motions for new trial and appeals. Cf. Collateral Attack." Black's Law Dictionary (8th Ed.2004) 492.

{¶ 19} From the above definitions, it is apparent that a "collateral attack" is not inherently improper in and of itself, and that the collateral-attack doctrine does not necessarily forbid *all* collateral attacks. Rather, another way to characterize a collateral attack is simply as an indirect attack, to generally differentiate it as something other than a direct attack. The objective of a collateral attack is to modify a previous judgment because it is allegedly ineffective or flawed for some fundamental reason.

{¶ 20} Collateral attacks on judgments conceivably can be mounted in either the court that issued the judgment or in a different court, as they involve any new "proceeding" not encompassed within the proceeding in which the original judgment was entered. Ohio's body of law recognizes certain specific types of actions that are sometimes pursued by criminal defendants (including habeas corpus proceedings and R.C. 2953.21 postconviction-relief proceedings) that fall within the definition of a collateral attack. See, e.g., *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, syllabus (a habeas corpus action is a collateral attack); *State v. Calhoun* (1999), 86 Ohio St.3d 279, 281, 714 N.E.2d 905 (a postconviction proceeding under R.C. 2953.21 is a collateral attack).

{¶ 21} In civil cases, a motion under Civ.R. 60(B) is one procedure available to a party (or a party's legal representative) to attempt to obtain relief from a final order or judgment in the issuing court. A proceeding under Civ.R. 60(B) technically falls within the definition of a collateral attack, but it is governed by the specific provisions of that rule. See *Rose Chevrolet, Inc. v. Adams* (1988), 36 Ohio St.3d 17, 21, 520 N.E.2d 564 (Civ.R. 60(B) relief is appropriate when "the interests of justice demand the setting aside of a judgment normally accorded finality"); *GTE Automatic Elec., Inc. v. ARC Industries, Inc.* (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113, paragraph two of the syllabus.

{¶ 22} In our jurisprudence, there is a firm and longstanding principle that final judgments are meant to be just that—final. See *Kingsborough,* 56 Ohio St. at 458, 47 N.E. 541. Therefore, subject to only rare exceptions, direct attacks, i.e., appeals, by parties to the litigation, are the primary way that a civil judgment is challenged. For these reasons, it necessarily follows that collateral or indirect attacks are disfavored and that they will succeed only in certain very limited situations. See *Coe v. Erb* (1898), 59 Ohio St. 259, 267–268, 52 N.E. 640.

{¶ 23} This court has determined that the reasons for disfavoring collateral attacks do not apply in two principal circumstances—when the issuing court lacked jurisdiction or when the order was the product of fraud (or of conduct in the nature of fraud). See *Coe,* 59 Ohio St. at 271, 52 N.E. 640 (strangers to a judgment are permitted to attack the judgment based on "fraud and want of jurisdiction"). See also *Lewis v. Reed* (1927), 117 Ohio St. 152, 159, 157 N.E. 897 (absent an invalid or void judgment or fraud in the procurement of the judgment, a valid judgment cannot be collaterally attacked). Ohio Pyro's action in Fayette County is not based on either of those two grounds. Therefore, unless other qualifying considerations are present, if this action is indeed a collateral attack on the 2001 judgment issued by the Jefferson County Court of Common Pleas, it is improper, and the trial court should have granted the motions to dismiss of the Fire Marshal and of Safety 4th.

{¶ 24} Although the 2001 judgment in Jefferson County was issued pursuant to the agreement of the parties to that litigation, it is nonetheless a valid judgment of the court. See *Gilbraith v. Hixson* (1987), 32 Ohio St.3d 127, 129, 512 N.E.2d 956 (a judgment entered by consent is "as effective as if the merits had been litigated" and is "just as enforceable as any other validly entered judgment"). Consequently, that judgment is entitled to the presumption of finality that the doctrine disfavoring collateral attacks affords to a valid judgment.

{¶ 25} In general, a collateral attack on a judgment is actually an attack on the *integrity* of the judgment. The merits of the previous judgment are not at issue in such a situation—only the fundamental validity of the previous judgment is at issue. Consequently, the collateral-attack doctrine contains elements of the same considerations that come into play when considering whether a particular judgment is void or voidable. See *Pratts,* 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 10–12. When a judgment was issued without jurisdiction or was procured by fraud, it is void and is subject to collateral attack. See *Coe,* 59 Ohio St. at 271, 52 N.E. 640. But in the absence of those fundamental deficiencies, a judgment is considered "valid" (even if it might perhaps have been flawed in its resolution of the merits of the case) and is generally not subject to collateral attack.

{¶ 26} Contrary to the holding of the court of appeals in this case, Ohio Pyro's action can be characterized no other way than as an impermissible collateral attack on the 2001 judgment entered by the Jefferson County Common Pleas Court. The Jefferson County 2001 judgment ordered the Fire Marshal to allow Safety 4th to relocate its licenses, including the relocation of the license at issue in this case to Fayette County, provided all conditions for relocation were met. By asserting that the Fire Marshal should not be permitted to approve Safety 4th's relocation to Fayette County, Ohio Pyro seeks its own relief that directly conflicts with the terms of the Jefferson County judgment.

{¶ 27} There are significant limitations on the ability of a judgment to bind a nonparty. See *Coe*, 59 Ohio St. at 268–270, 52 N.E. 640. Therefore, an analysis of this case would be incomplete without examining Ohio Pyro's standing to assert the claims of its complaint as the basis for a collateral attack on the 2001 Jefferson County judgment. "Standing" is defined at its most basic as "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right." Black's Law Dictionary (8th Ed.2004) 1442. Before an Ohio court can consider the merits of a legal claim, the person or entity seeking relief must establish standing to sue. *Ohio Contrs. Assn. v. Bicking* (1994), 71 Ohio St.3d 318, 320, 643 N.E.2d 1088. " '[T]he question of standing depends upon whether the party has alleged such a "personal stake in the outcome of the controversy * * *" as to ensure that "the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution." ' " *State ex rel. Dallman v. Franklin Cty. Court of Common Pleas* (1973), 35 Ohio St.2d 176, 178–179, 64 O.O.2d 103, 298 N.E.2d 515, quoting *Sierra Club v. Morton* (1972), 405 U.S. 727, 732, 92 S.Ct. 1361, 31 L.Ed.2d 636, quoting *Baker v. Carr* (1962), 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663, and *Flast v. Cohen* (1968), 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947.

{¶ 28} The rights Ohio Pyro asserts in its complaint are the right to protect its market share and to be free from unfair competition, based on its reliance on the moratorium that it claims should prevent Safety 4th's relocation to Fayette County. These asserted rights are insufficient to grant standing to Ohio Pyro.

{¶ 29} Ohio Pyro argues that its action does not involve a "collateral attack," because it is merely attempting to vindicate its own rights. However, in this case, the economic interests Ohio Pyro seeks to advance are incapable of supporting its efforts to attack the 2001 Jefferson County judgment.

{¶ 30} The major purpose underlying the fireworks statutes and regulations is the protection of the public. Other than a vague reference in Ohio Pyro's complaint to risks to the public welfare, there is no indication that the 2001 judgment implicates concerns regarding endangerment of the public safety. That judgment expressly requires that all laws and regulations must be complied

with before relocation will be permitted. This quite clearly is not the rare case in which exceptional circumstances are present that justify the allowance of a collateral attack on a previous judgment in a court different from the one that issued the judgment.

{¶ 31} In light of the principles explained above, Ohio Pyro's arguments regarding the substantive terms of the 2001 Jefferson County judgment are not relevant to our inquiry. Nonetheless, we have reviewed the terms of the settlement agreement incorporated into that judgment entry and find no merit to Ohio Pyro's arguments that the settlement was inappropriate or "illegal," as Ohio Pyro alleges in its complaint.

{¶ 32} For our purposes, it is sufficient to recognize that the Jefferson County court had jurisdiction to issue the judgment that it did, and that the judgment was not the result of fraudulent conduct. Furthermore, Ohio Pyro's arguments that Paragraph 15 of the settlement indicates that the 2001 order did not intend to confer authority on the Fire Marshal to approve the relocation (so that the moratorium can forbid the relocation) are explicitly contradicted by other clear provisions of the settlement—in particular paragraph 1—concerning the moratorium that Ohio Pyro bases its claims on.

{¶ 33} Ohio Pyro moved to protect its specific business interests by attempting to intervene in the Jefferson County case in late 1999 and did not appeal the trial court's 2000 denial of intervention. Contrary to Ohio Pyro's argument, which is based in large part on res judicata principles, the fact that it was denied participation and thus was never a party in the Jefferson County case is not relevant to its ability to collaterally attack that judgment in the instant case.

{¶ 34} The concept of res judicata is related in some respects to the collateral-attack doctrine. Res judicata principles can apply to prevent parties and those in privity with them from modifying or collaterally attacking a previous judgment. See *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 381–382, 653 N.E.2d 226. Because Ohio Pyro was not a party to the Jefferson County case, and is not in privity with any party that participated in that case, res judicata principles do not apply to its attempt to obtain relief in Fayette County.

{¶ 35} However, the collateral-attack doctrine also functions independently of res judicata principles. Although res judicata principles apply only to parties and those in privity with them, the collateral-attack doctrine applies to both parties and nonparties, contrary to Ohio Pyro's position that the collateral-attack doctrine cannot apply to a nonparty. See *Moor v. Parsons* (1918), 98 Ohio St. 233, 243, 120 N.E. 305 (an attack on a judgment "is collateral so far as it is sought to affect others than parties to the record"); *Plater v. Jefferson* (1956), 75 Ohio Law Abs. 68, 136 N.E.2d 111, 113 ("inasmuch as plaintiff has not * * * brought himself within that class of strangers who may properly collaterally attack a

judgment, the trial court did not err when it * * * dismissed plaintiff's action"). The interests that Ohio Pyro asserts are insufficient to support its efforts to collaterally attack the Jefferson County judgment. Thus, the principles disfavoring collateral attacks fully apply to Ohio Pyro's attempts in this case.

{¶ 36} Intervention provided Ohio Pyro with a potential opportunity to interject its interests into the Jefferson County case, but whether Ohio Pyro successfully asserted those interests at that time is not relevant to its ability to launch the instant collateral attack. Therefore, it is irrelevant to our discussion that Ohio Pyro did not appeal from the denial of its motion to intervene in that previous case, and it further does not matter for our purposes whether the trial court's decision to deny intervention was a final, appealable order.

### Conclusion

{¶ 37} For the foregoing reasons, we hold that a collateral attack on a judgment issued by a different court in a civil case will succeed only when the first ruling was issued without jurisdiction or was the product of fraudulent conduct. Ohio Pyro's complaint does not challenge the fundamental validity of the 2001 Jefferson County judgment. Ohio Pyro's action fails because it asserts interests that are insufficient as a matter of law to overrule the judgment of the Jefferson County Court of Common Pleas. Consequently, Ohio Pyro has no standing to seek judicial enforcement of the rights it asserts.

{¶ 38} The motions to dismiss filed in this case by the Fire Marshal and by Safety 4th conclusively demonstrate that Ohio Pyro's action is an impermissible collateral attack on a previous judgment. Therefore, Ohio Pyro's complaint does not state a valid claim, and the trial court should have dismissed the complaint.[6]

{¶ 39} We reverse the judgment of the court of appeals. This cause is remanded to the trial court for that court to enter an order dismissing the complaint.

Judgment reversed
and cause remanded.

MOYER, C.J., and LUNDBERG STRATTON, LANZINGER, and CUPP, JJ., concur.

PFEIFER, J., concurs in judgment only.

O'DONNELL, J., dissents.

---

6. Given our holding that the trial court should not have entertained Ohio Pyro's action because it is an improper collateral attack on the 2001 Jefferson County judgment, there is no need to address the second propositions of law raised by both the Fire Marshal and by Safety 4th, which question the propriety of injunctive relief in this case.

**O'DONNELL, J., dissenting.**

{¶ 40} Respectfully, I dissent.

{¶ 41} The Jefferson County Common Pleas Court judgment is binding only upon the parties to that suit. When the state Fire Marshal settled that case and agreed to the court's entry of judgment, he bound himself to its terms. The court simply journalized the settlement agreement between those parties. The record before us, however, does not reflect whether the Attorney General was made a party to this litigation, which questioned, in part, the constitutionality of Am.Sub.H.B. 215, 147 Ohio Laws, Part I, 909, 2197.

{¶ 42} The peculiar problem here arises because the Fire Marshal must now choose whether to comply with the Jefferson County order to transfer Safety 4th's fireworks licenses, pursuant to his agreement to do so, or with the Fayette County order enjoining him from doing so; the Fire Marshal therefore will violate a court order no matter which course of action he follows. This conflict creates the question before us.

{¶ 43} Realizing that its pecuniary interests could be affected by a judgment in the Jefferson County Court of Common Pleas, Ohio Pyro filed a timely motion to intervene in that action, but the trial court disallowed the motion. In its ruling denying Ohio Pyro's motion, the Jefferson County court indicated that while Ohio Pyro claimed an interest in preventing Safety 4th from moving into an area where it would compete with Ohio Pyro, it had not alleged that Safety 4th was actually moving into that area.

{¶ 44} As a result of the Jefferson County settlement agreement and order, Safety 4th took significant steps toward relocating its fireworks licenses to Fayette County by purchasing real estate and erecting a building. Ohio Pyro then filed this action in the Fayette County Court of Common Pleas to contest the impending transfer of Safety 4th's licenses, asserting a violation of R.C. 3743.75. The Fayette County Court of Common Pleas agreed with Ohio Pyro and prohibited the Fire Marshal from completing the transfer, and the Twelfth District Court of Appeals affirmed that judgment.

{¶ 45} The matter is now before this court on the question whether Ohio Pyro, a stranger to the Jefferson County action, has improperly levied a collateral attack on that court's order.

{¶ 46} Here, we find a litigant who actively sought to protect its legal rights by moving to intervene in the Jefferson County action and then by suing to prevent the transfer of the Safety 4th licenses to Fayette County. Today, a majority of this court tells Ohio Pyro that the action filed in Fayette County "amounts to an impermissible collateral attack on a prior valid judgment." Majority, at ¶ 1.

This, in my view, misapplies the collateral-attack doctrine and sets a bad precedent for future litigants.

{¶ 47} This action did not constitute a collateral attack on the settlement between the Fire Marshal and Safety 4th, as nothing in that settlement specifically ordered transfer of the Safety 4th fireworks licenses to Fayette County—those transfers could have been to any of the 88 counties in Ohio, the vast majority of which would have posed no conflict for the Fire Marshall and no harm to Ohio Pyro. In fact, the Jefferson County trial court stated in its entry denying intervention that the claimed interest of preventing a competitor from moving into an area where it could compete with an existing business was "so speculative that it cannot be seriously considered," and further opined that the interests of Ohio Pyro would be "adequately represented by the Ohio Department of Commerce who will vigorously defend the Fireworks Code as it now stands." It is now apparent that the Ohio Department of Commerce did not adequately represent Ohio Pyro's interests in the Jefferson County proceeding.

{¶ 48} Simply stated, the Fayette County action does not collaterally attack the Jefferson County Court of Common Pleas ruling. Inasmuch as Ohio Pyro had been denied the right to intervene in the Jefferson County case, it had no ability to appeal the judgment resulting from the settlement between the Fire Marshal and Safety 4th.

{¶ 49} Even assuming, arguendo, that Ohio Pyro's action is a collateral attack, I would not hold it to be an "impermissible" collateral attack. The United States Supreme Court has recognized that " '[i]t is a principle of general application in Anglo–American jurisprudence that one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.' *Hansberry v. Lee* (1940), 311 U.S. 32, 40, 61 S.Ct. 115, 117, 85 L.Ed. 22. * * * This rule is part of our 'deep-rooted historic tradition that everyone should have his own day in court.' 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure [ (1981) 417, Section 4449] * * *. A judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings." *Martin v. Wilks* (1989), 490 U.S. 755, 761–762, 109 S.Ct. 2180, 104 L.Ed.2d 835, superseded in part by Section 108 of the Civil Rights Act of 1991, codified at Section 2000e–2(n), Title 42, U.S.Code.

{¶ 50} As the court noted in *Plater v. Jefferson* (App.1956), 75 Ohio Law Abs. 68, 136 N.E.2d 111, strangers to a judgment may, in some cases, collaterally attack that judgment. The court in *Plater* held that " '[i]t is only those strangers who, if the judgment were given full credit and effect, *would be prejudiced in regard to some pre-existing right* that are permitted to impeach the judgment. Being neither parties to the action, nor entitled to manage the cause nor appeal

from the judgment, *they are by law allowed to impeach it whenever it is attempted to be enforced against them so as to effect [sic] rights or interests acquired prior to its rendition.'* " (Emphasis added and emphasis sic.) 75 Ohio Law Abs. 68, 136 N.E.2d at 113, quoting 1 Freeman, A Treatise on the Law of Judgments (5th Ed.1925), 636–637, Section 319.

{¶ 51} Moreover, in determining that the denial of an insurer's motion to intervene did not constitute a final, appealable order, this court held: "When a party has sought and been denied intervention, collateral estoppel will not prohibit future litigation of similar issues." *Gehm v. Timberline Post & Frame,* 112 Ohio St.3d 514, 2007-Ohio-607, 861 N.E.2d 519, at paragraph two of the syllabus, construing *Howell v. Richardson* (1989), 45 Ohio St.3d 365, 544 N.E.2d 878.

{¶ 52} Ohio Pyro has done just that. It unsuccessfully sought to intervene in the action between Safety 4th and the Fire Marshall. Its business interest in the enforcement of the fireworks moratorium became ripe when Safety 4th attempted to transfer its licenses to Fayette County, where Ohio Pyro does business. Ohio Pyro then sued in Fayette County to protect its business interests, because it had been denied the right to do so in the Jefferson County action.

{¶ 53} The appellate court noted that "[i]t is not necessary to defeat or avoid the operation of the Jefferson County agreed settlement entry for the [Fayette County] trial court to address the issues brought forth in this action filed below." *Ohio Pyro, Inc. v. Ohio Dept. of Commerce, Div. of State Fire Marshal,* Fayette App. Nos. CA 2005–03–009 and CA 2005–03–011, 2006-Ohio-1002, 2006 WL 522457, ¶ 19. Even assuming this to be incorrect, I would still permit Ohio Pyro to proceed based upon my reading of *Gehm* and *Plater.* In either event, I would allow Ohio Pyro to maintain this action.

{¶ 54} I therefore concur with the conclusion reached by the appellate court. The grant of summary judgment was appropriate on the issues of irreparable harm and no adequate remedy at law, and on the claim for declaratory relief, dismissal was not appropriate.

{¶ 55} Accordingly, I would affirm the judgment of the appellate court.

————————

Bricker & Eckler, L.L.P., and T. Earl LeVere, for appellees.

Marc Dann, Attorney General, Elise Porter, Acting State Solicitor, Stephen P. Carney, Deputy Solicitor, and Hilary R. Damaser and Susan M. Sullivan, Assistant Solicitors, for appellant Ohio Department of Commerce, Division of State Fire Marshal.

Wiles, Boyle, Burkholder & Bringardner, L.P.A., Michael L. Close, and Dale D. Cook; and W. Scott Simon, for appellants Safety 4th Fireworks, Inc., and Liberty Fireworks, Inc.