[Cite as *Image Group of Toledo, Inc. v. Holland-Springfield Twp. Joint Economic Dev. Zone*, 2017-Ohio-4470.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

The Image Group of Toledo, Inc., et al.　　　Court of Appeals No. L-16-1058

　　　Appellants/Cross-Appellees　　　Trial Court No. CI0201503107

v.

Holland-Springfield Township Joint
Economic Development Zone, et al.　　　**DECISION AND JUDGMENT**

　　　Appellees/Cross-Appellants　　　Decided:　June 23, 2017

* * * * *

Cary Rodman Cooper and Margaret J. Lockhart, for appellants/
cross-appellees.

Gary O. Sommer, R. Kent Murphree and John P. Lewandowski,
for appellees/cross-appellants.

Paul Skaff, for appellee village of Holland.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} This is an appeal and cross-appeal from the judgment of the Lucas County

Court of Common Pleas.  Appellants/cross-appellees, The Image Group of Toledo, Inc.,

as well as 14 other businesses and one individual (collectively "appellants"), appeal the trial court's determination on summary judgment that Springfield Township and the village of Holland complied with the relevant statutory requirements when they created the Holland-Springfield Township Joint Economic Development Zone ("JEDZ"). Appellees/cross-appellants, Springfield Township, the JEDZ, and the Board of the JEDZ (collectively "appellees"), cross-appeal the trial court's determination that appellants have standing to maintain this action. Appellee, the village of Holland ("the Village"), did not join in the cross-appeal. For the reasons that follow, we affirm.

## I. Facts and Procedural Background

{¶ 2} The facts in this matter are undisputed. Effective June 5, 2014, R.C. 715.691 was amended to provide that a township and municipal corporation "may enter into a contract whereby they agree to share in the costs of improvements for an area or areas located in one or more of the contracting parties that they designate as a joint economic development zone for the purpose of facilitating new or expanded growth for commercial or economic development in the state." The amended statute, however, limited the time to create a joint economic development zone to any time before January 1, 2015.

{¶ 3} In July 2014, Springfield Township and the Village entered into an agreement to create the JEDZ, which has as its boundaries Angola Road on the north, Airport Highway on the south, Holland-Sylvania Road on the east, and McCord Road on the west. The agreement was approved by voters in November 2014. In December 2014,

2.

the JEDZ Board of Directors enacted a 1.5 percent income tax, to become effective on July 1, 2015. On June 24, 2015, appellants, who are all within the boundaries of the JEDZ and thus subject to the tax, filed an action to enjoin the implementation of the tax, and to obtain a declaratory judgment that the contract creating the JEDZ is void. As the basis for their complaint, appellants alleged that appellees failed to adhere to the statutory requirements in R.C. 715.691 when creating the JEDZ.

{¶ 4} On July 21, 2015, appellees filed a motion for summary judgment, arguing that appellants lacked standing to challenge the validity of the JEDZ.[1] On August 21, 2015, appellees filed an additional motion for partial summary judgment, arguing that there is no genuine issue of material fact that the JEDZ was validly created, leaving only the issue of the validity of the tax imposed by the JEDZ. Also on August 21, 2015, appellants filed their motion for summary judgment, arguing that the JEDZ itself was invalid because appellees failed to satisfy the statutory requirements, and that the tax imposed by the JEDZ was invalid because it did not comply with R.C. 715.691(H).

{¶ 5} On October 20, 2015, the trial court entered its judgment in which it found that appellants had standing to pursue the action, but that the creation of the JEDZ complied with the statutory requirements and thus was valid. Appellants appealed the October 20, 2015 judgment, but we dismissed the appeal for lack of a final appealable order because the judgment entry did not resolve the issue of whether the tax imposed by the JEDZ was valid. On February 18, 2016, the trial court entered a second judgment,

---

[1] The Village filed a similar motion on August 18, 2015.

3.

incorporating its determination that the 1.5 percent income tax imposed by the JEDZ was invalid.

## II. Assignments of Error

{¶ 6} Appellants have timely appealed the trial court's February 18, 2016 judgment, asserting seven assignments of error for our review:

1. The trial court erred as a matter of law in ruling that the Village agreed in the JEDZ Contract to share in the costs of improvements for the Joint Economic Development Zone as required by R.C. 715.691(B).

2. The trial court erred as a matter of law in ruling that the JEDZ Contract is valid even though the Defendants did not include in the JEDZ Contract or in the Economic Development Plan a schedule for the implementation or provision of any new, expanded or additional services, facilities or improvements within the JEDZ as required by R.C. 715.691(C); and further by ruling that there is no requirement that at least 50% of the revenue from the new tax must be spent for such improvements as required by R.C. 715.691(H).

3. The trial court erred as a matter of law in ruling that the JEDZ Contract sets forth the Village's contribution to the Joint Economic Development Zone as required by R.C. 715.691(C).

4.

4. The trial court erred as a matter of law in ruling that the Joint Economic Development Review Council was properly appointed as required by R.C. 715.692.

5. The trial court erred as a matter of law in ruling, without analysis, that the Township and Village held a public hearing concerning the Contract and the Zone and that they made a final copy of the JEDZ Contract and Economic Development Plan available 30 days in advance of the public hearing as required by R.C. 715.691(D).

6. The trial court mistakenly disregarded undisputed evidence and erred as a matter of law in ruling that the Township properly filed with the Board of Elections a copy of the Resolution approving the JEDZ Contract as required by R.C. 715.691(F).

7. The trial court erred as a matter of law in ruling that there was sufficient consideration for the JEDZ Contract and that Plaintiffs could not challenge the JEDZ Contract for lack of consideration because Plaintiffs are not parties or third-party beneficiaries to the JEDZ Contract.

{¶ 7} Additionally, appellees have timely cross-appealed the trial court's February 18, 2016 judgment, asserting one assignment of error for our review:

1. The trial court erred in finding the Appellants have standing to challenge the tax.

## III.  Analysis

**{¶ 8}** We will begin with appellees' assignment of error in their cross-appeal.

### A.  Standing

**{¶ 9}** "Whether a party has established standing to bring an action before the court is a question of law, which we review de novo." *Moore v. City of Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 20.  "'Standing' is defined at its most basic as '[a] party's right to make a legal claim or seek judicial enforcement of a duty or right.'" *Clifton v. Village of Blanchester*, 131 Ohio St.3d 287, 2012-Ohio-780, 964 N.E.2d 414, ¶ 15, quoting *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, 875 N.E.2d 550, ¶ 27.  "'[T]he question of standing depends upon whether the party has alleged such a personal stake in the outcome of the controversy * * * as to ensure that the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution.'" (Internal quotations omitted.)  *Id.*  "To succeed in establishing standing, plaintiffs must show that they suffered (1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct, and (3) likely to be redressed by the requested relief." *Moore* at ¶ 22, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).  Notably, the Ohio Supreme Court has cautioned that "standing is not a technical rule intended to keep aggrieved parties out of court.  'Rather, it is a practical concept designed to insure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect

the rights of others are forged in hot controversy, with each view fairly and vigorously represented.'" *Id.* at ¶ 47, quoting *Fort Trumbull Conservancy, L.L.C. v. Alves*, 262 Conn. 480, 486, 815 A.2d 1188 (2003).

{¶ 10} In support of their assignment of error, appellees argue that appellants lack standing to challenge the creation of the JEDZ because they have not alleged an injury that is different from that suffered by the public in general. *See Cuyahoga Cty. Bd. of Commrs. v. State*, 112 Ohio St.3d 59, 2006-Ohio-6499, 858 N.E.2d 330, ¶ 22 ("In Ohio, it is well established that standing to attack the constitutionality of a legislative enactment exists only where a litigant has suffered or is threatened with direct and concrete injury in a manner or degree different from that suffered by the public in general, that the law in question has caused the injury, and that the relief requested will redress the injury."). Appellees point out that appellants are similarly situated to the other 400 business that are located within the JEDZ. Thus, appellees conclude that appellants' complaint is a generalized grievance in that appellants have not established a particularized injury.

{¶ 11} Appellants respond that they do not share the same burden as the public generally. Appellants argue that the voters of all of Springfield Township approved the JEDZ, but that the JEDZ is limited in application to a discreet group of businesses and employees located within a small portion of Springfield Township. Appellants rely on *State ex rel. Masterson v. Ohio State Racing Comm.*, 162 Ohio St. 366, 123 N.E.2d 1 (1954), in which the Ohio Supreme Court held that an individual did not have standing as

7.

a general taxpayer to challenge expenditures by the Ohio State Racing Commission.  The court quoted the general rule regarding standing under the common law,

> Even in the absence of legislation, a taxpayer has a right to call upon a court of equity to interfere to prevent the consummation of a wrong such as occurs when public officials attempt to make an illegal expenditure of public money, or to create an illegal debt, which he, in common with other property holders of the taxing district, may otherwise be compelled to pay.

> It is equally fundamental that at common law and apart from statute, a taxpayer can not bring an action to prevent the carrying out of a public contract or the expenditure of public funds unless he has some special interest therein by reason of which his own property rights are put in jeopardy.  In other words, private citizens may not restrain official acts when they fail to allege and prove damage to themselves different in character from that sustained by the public generally.  (Internal citations omitted.)  *Id.* at 368.

{¶ 12} Appellants argue that, unlike the public generally, they are required to pay taxes created by the JEDZ, a portion of which is to be used to reinvest in the JEDZ.  Thus, appellants reason that they have a special interest in the JEDZ tax funds, and therefore have standing to challenge the legality of the JEDZ.  We agree.

{¶ 13} Here, the limited applicability of the JEDZ tax constitutes a discreet and particularized injury to appellants and others located within the JEDZ that is different

8.

from that suffered by the public at large. Consequently, we hold that appellants have standing to challenge the legality of the JEDZ. *See Brinkman v. Miami Univ.*, 12th Dist. Butler No. CA2006-12-313, 2007-Ohio-4372, ¶ 35 ("*Masterson* established that if a challenged expenditure derives from a special fund, and if the plaintiff belongs to the class of individuals who contributed to the fund, the plaintiff has standing.").

{¶ 14} Accordingly, appellees' assignment of error on cross-appeal is not well-taken.

## B. Validity of JEDZ Contract

{¶ 15} In their appellate brief, appellants challenge the trial court's determination on summary judgment that the creation of the JEDZ adhered to the statutory requirements. We review the grant of a motion for summary judgment de novo, applying the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989); *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Under Civ.R. 56(C), summary judgment is appropriate where (1) no genuine issue as to any material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

9.

## 1. R.C. 715.691(B)

{¶ 16} In their first assignment of error, appellants argue that the JEDZ contract does not satisfy the requirements of R.C. 715.691(B), which provides,

> This section provides procedures and requirements for creating and operating a joint economic development zone. This section applies only if one of the contracting parties to the zone does not levy a municipal income tax under Chapter 718. of the Revised Code.

> At any time before January 1, 2015, two or more municipal corporations or one or more townships and one or more municipal corporations may enter into a contract whereby they agree to share in the costs of improvements for an area or areas located in one or more of the contracting parties that they designate as a joint economic development zone for the purpose of facilitating new or expanded growth for commercial or economic development in the state. The contract and zone shall meet the requirements of divisions (B) to (J) of this section.

In particular, appellants challenge the conclusion that the Village agreed to share in the costs of improvements for the JEDZ.

{¶ 17} Section 2.3 of the Joint Economic Development Zone Contract between Holland and Springfield Township sets forth the parties relative contributions:

> The Township shall furnish or cause to be furnished to the JEDZ all usual and customary governmental services furnished by the Township to

the other territory of the Township, including, but not limited to maintenance and snow removal of Township-owned roads, fire protection, emergency medical services and general administration, and furnish to the JEDZ such services allowed by law and which the Township and the [JEDZ] Board deem appropriate and agree.

The Village shall, pursuant to the JEDZ Income Tax Agreement, furnish or cause to be furnished the services set forth in the Income Tax Agreement and may furnish to the JEDZ such services as allowed by law and which the Village and the Board deem appropriate and agree. The Village will also engage in activities to promote, compliment and benefit economic development in the JEDZ as determined in the sole discretion of the Village. The Village is not expected or required to undertake any such activity to the detriment of economic development in the Village. Other than the services to be provided by the Village pursuant to the JEDZ Income Tax Agreement and this paragraph, nothing contained herein shall be construed as obligating the Village to provide any particular service, level of service, or financial commitment to the JEDZ, and such matters shall be left to the further agreement of the Village and the [JEDZ] Board.

{¶ 18} Appellants argue that under the terms of the agreement, the Village is not required to contribute money or services for improvements in the JEDZ. In further support of their position, appellants cite an Addendum to the Joint Economic

Development Zone Contract to clarify the fourth paragraph in Section 4.3, which provided,

In accordance with paragraph (H) of R.C. 715.691, as amended by HB No. 289, not less than fifty percent (50%) of the revenue from the tax shall be used solely to provide the new, expanded, or additional services, facilities, or improvements specified in the economic development plan. Said moneys shall come from and include the tax administration payments (4.1 herein), the revenues allocated to the Board, (3.2 herein), and the balance from the contracting parties.

The Addendum clarified,

The parties agree that Section 4.3 of the Agreement, specifically the fourth paragraph of said Section, is intended to set forth that Holland will, at its sole discretion, provide services to the JEDZ area, including, but not limited to, maintenance and improvements to rights of way, and that the value of such services shall be applied to the fifty percent requirement set forth in R.C. 715.691. Holland shall not be obligated to contribute money or services to the JEDZ beyond those services provided by it at its discretion. And, further, that the Township shall make up any deficiency resulting after application of the value of Holland services to the JEDZ to the extent that Township has received a Section 715.691 distribution of Net Revenue during the previous annual period.

12.

Finally, appellants cite the minutes of the July 28, 2014 Springfield Township Trustees' Meeting, in which it was acknowledged that "the Village of Holland is only a partner for legislative purposes." From this evidence, appellants conclude that the Village has no obligation to share in the costs of the improvements to the JEDZ, and therefore the JEDZ Contract does not satisfy R.C. 715.691(B).

{¶ 19} In response, appellees note that under R.C. 715.691(C), each party's contributions to the JEDZ "may be in any form that the contracting parties agree to, and may include, but are not limited to, the provision of services, money, or equipment." Appellees then assert that the Village agreed to "engage in activities to promote, compliment and benefit economic development in the JEDZ," and, in the Village's discretion, "provide services to the JEDZ area, including, but not limited to, maintenance and improvements to rights of way." The Village also adds that its agreement to provide tax administration services constitutes a contribution to the JEDZ. Appellees argue that R.C. 715.691(B) and (C) do not require an even split of the costs of the improvements to the JEDZ, and therefore because the Village has agreed to contribute to the JEDZ in some manner, the statute is satisfied.

{¶ 20} Upon consideration, we are persuaded by appellees' argument. R.C. 715.691(B) requires only that the parties agree to share in the costs of improvements for the purpose of "facilitating new or expanded growth for commercial or economic development in the state." R.C. 715.691(C) then defines "contributions" broadly to be in any form to which the contracting parties agree. Here, the parties agreed to the Village's

13.

nominal contribution to "engage in activities to promote, compliment and benefit economic development in the JEDZ as determined in the sole discretion of the Village," and the Village's possible contribution to "maintenance and improvements to rights of way," as provided in the Village's discretion. While not a significant contribution, the Village's role is nonetheless what the parties agreed to for the stated purpose of facilitating new or expanded growth for commercial and economic development within the JEDZ. Therefore, we hold that the JEDZ Contract satisfies R.C. 715.691(B).

{¶ 21} Accordingly, appellants' first assignment of error is not well-taken.

## 2. R.C. 715.691(C)

{¶ 22} In their second assignment of error, appellants present two arguments why the JEDZ contract does not comply with R.C. 715.691(C), which provides, in pertinent part,

> The contract shall set forth each contracting party's contribution to the joint economic development zone. The contributions may be in any form that the contracting parties agree to, and may include, but are not limited to, the provision of services, money, or equipment. * * * If the contract is approved by the electors of any contracting party under division (F) of this section or substantially amended after the effective date of H.B. 289 of the 130th general assembly, the contracting parties shall include within the contract or the amendment to the contract an economic development plan for the zone, a schedule for the implementation or

14.

provision of any new, expanded, or additional services, facilities, or improvements within the zone or in the area surrounding the zone, and any provisions necessary for the contracting parties to create a joint economic development review council in compliance with section 715.692 of the Revised Code.

{¶ 23} Appellants' first argument is that the contract fails to set forth any contribution to be made by the Village. This is also the subject of appellants' third assignment of error, which they do not argue separately. Appellants' first argument is effectively a reassertion of the argument made in appellants' first assignment of error, and for the reasons stated above is not persuasive.

{¶ 24} In their second argument, appellants contend that the parties have failed to provide "a schedule for the implementation or provision of any new, expanded, or additional services, facilities, or improvements within the zone or in the area surrounding the zone," because there are no proposed new, expanded, or additional services or improvements. Relevant here, the JEDZ Economic Development Plan states,

> 4. Schedule for provision of new, expanded, or additional services, facilities, or improvement:
>
> A. The Township shall use a portion of the allocation of the income tax it receives to pay a portion of the costs of public services. The Township shall provide for the construction and improvement of such roads

in the Township it deems appropriate to provide an improved transportation network to benefit JEDZ.

B.  The Township shall furthermore provide expanded public services to the JEDZ in the form of:  police protection, fire protection, civil defense, and local government administration, commensurate with economic growth.  The Township expects to provide a superior level of services in order to attract development and to support commerce once it is established.  Participating in JEDZ revenues may enable Township expenditures in furtherance of improvements which are already planned and utilization of tax increment financing and inter-governmental agreements pertaining thereto also in furtherance of improvements.

* * *

F.  Intended contributions of the parties assume adequacy of net tax revenues, anticipated revenues, funding from other sources, and availability of financing upon acceptable terms in order to provide necessary funding for projects and services.  As of the day of commencement of the JEDZ Contract, the contracting parties do not have the specific revenue projections and final construction estimates to enable defined improvements and improvement schedules.  Nevertheless, the contracting parties shall exercise due diligence in planning for improvements and undertaking construction in furtherance of economic development to

benefit the JEDZ, the contracting parties, Lucas County, and the State of Ohio.

**{¶ 25}** Appellants argue that R.C. 715.691(C) requires that the economic development plan provide for new or additional services and improvements. They reason that the word "any," which immediately precedes "new, expanded, or additional services, facilities, or improvements," is not a term of limitation, but instead means "every" or "all." Appellants further support their argument by referencing R.C. 715.691(H), which states,

> The contract may grant to the board of directors appointed under division (G) of this section the power to adopt a resolution to levy an income tax within the zone. The income tax shall be used for the purposes of the zone and for the purposes of the contracting parties pursuant to the contract. Not less than fifty per cent of the revenue from the tax shall be used solely to provide the new, expanded, or additional services, facilities, or improvements specified in the economic development plan until all such services, facilities, or improvements have been completed as specified in that plan.

From this, it could be derived that the legislature presumed and intended that the economic development plan include new, expanded, or additional services, facilities, or improvements.

17.

{¶ 26} Appellees, on the other hand, argue that the use of the word "any" in R.C. 715.691(C) must be read to mean "if any;" that is, if there are any new, expanded, or additional services, facilities, or improvements, then the economic development plan must include a schedule for them. We agree.

{¶ 27} "The primary rule in statutory construction is to give effect to the legislature's intention." *Cline v. Ohio Bur. of Motor Vehicles*, 61 Ohio St.3d 93, 97, 573 N.E.2d 77 (1991). "In determining intent, it is the duty of the court to give effect to the words used, not to delete words used or insert words not used." *Id.* "Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to apply rules of statutory interpretation." *Id.* at 96. "However, where a statute is found to be subject to various interpretations, a court called upon to interpret its provisions may invoke rules of statutory construction in order to arrive at legislative intent." *Id.* Here, we find that the language of the statute is plain and unambiguous.

{¶ 28} Under R.C. 715.691, there is no affirmative mandate that an economic plan must provide for new, expanded, or additional services, facilities, or improvements. Had the legislature intended such a mandate, it simply could have omitted the word "any" in R.C. 715.691(C). Rather, the clear meaning of the statute as written is that if new, expanded, or additional services, facilities, or improvements are part of the economic development plan, a schedule for them must be included. In this case, because there are no identified new or additional services, facilities, or improvements, the JEDZ Economic

18.

Development Plan is not flawed for failing to include a schedule. Therefore, we hold that the JEDZ Economic Development Plan satisfies R.C. 715.691(C).

{¶ 29} As an additional matter, we note that appellants contest the trial court's conclusion that because there are no scheduled new, expanded, or additional services, facilities, or improvements, none of the income tax revenue generated by the JEDZ must be spent in the JEDZ. However, we do not reach this issue at this time because under the facts on summary judgment, no income tax revenue has yet been collected. Thus, any directive as to how the revenue is permitted to be used under R.C. 715.691(H) would be purely advisory. *See Reinbolt v. Natl. Fire Ins. Co.*, 158 Ohio App.3d 453, 2004-Ohio-4845, 816 N.E.2d 1083, ¶ 13 (6th Dist.) ("[C]ourts have the power to resolve present disputes and controversies, but do not have authority to issue advisory opinions to prevent future disputes.").

{¶ 30} Accordingly, appellants' second and third assignments of error are not well-taken.

### 3. R.C. 715.692(C)(2)(c)

{¶ 31} In their fourth assignment of error, appellants challenge the method by which the Joint Economic Development Review Council ("JEDRC") was formed. Relevant here, R.C. 715.692(C)(2)(c) provides,

> Except as provided by division (C)(2)(d) of this section, four
> appointed members shall be owners of businesses operating within the zone
> or an individual designated by such an owner. The contracting parties shall

19.

first appoint the owners of the four businesses that employ the most persons within the zone. If one or more of these owners is unwilling or unable to serve as a member of the council or to designate an individual to serve in the owner's place, the contracting parties shall appoint the owner of the business that employs the next most number of persons within the zone until each position to be appointed under this division is filled. No business may have more than one owner or a designee thereof serving as a member of the council at any time.

{¶ 32} To demonstrate their compliance with R.C. 715.692(C)(2)(c), appellees submitted the affidavit of Leslie Kohli, the Springfield Township Administrator, in which she described her efforts to ascertain and appoint the four largest employers. Kohli stated that she identified the businesses that might be the larger employers in the JEDZ through publicly available information, consultation with the Lucas County Auditor, and experience living and working in Springfield Township. Kohli then contacted those businesses by telephone, email, or in person to inquire as to the number of their employees, and their willingness to serve on the JEDRC. Kohli identified Sam's Club, First Energy, Kroger, and Kohl's as the four largest employers. Sam's Club and First Energy accepted appointments. Kroger declined an appointment since the store was moving out of the JEDZ. Kohl's was unavailable to attend the JEDRC meeting and failed to respond to future requests and notices regarding a new date for the meeting. Kohli stated that Target also was considered for an appointment, and was contacted by

phone, email, in person, and by delivering a letter. However, Target failed to respond with how many employees it had until July 28, 2014, well after the meeting time for the JEDRC. The next two businesses reporting the most employees were McDonald's (90 employees) and Kellermeyer (77 employees), both of which accepted appointments.

{¶ 33} Appellants posit that the statute requires that representatives of the four businesses with the most employees be appointed, and only if they are then unwilling or unable to serve will a replacement be appointed. Thus, appellants conclude that Kohli's process of determining whether businesses were willing and able to serve before appointing them was in contravention of the statute. In their brief, appellants argue that the trial court erred by granting deference to the Township's interpretation of what was required by R.C. 715.692(C)(2)(c). However, we note that this is a matter of statutory compliance, not interpretation. Thus, the relevant issue is whether a genuine issue of material fact exists that appellees have not complied with the unambiguous language of R.C. 715.692(C)(2)(c). We hold that it does not.

{¶ 34} R.C. 715.692(C)(2)(c) requires that the four largest employers who are willing and able to serve be appointed to the JEDRC, and provides a method for achieving this result. We find that appellants' argument that businesses must first be appointed and then removed elevates form over substance. Here, appellees have presented evidence through Kohli's affidavit that the four willing and able businesses employing the most employees have been appointed to the JEDRC. Appellants have not

21.

presented any evidence to the contrary.[2]  Therefore, we hold that appellees have complied with R.C. 715.692(C)(2)(c) in forming the JEDRC.

{¶ 35} Accordingly, appellants' fourth assignment of error is not well-taken.

## 4.  R.C. 715.691(D)

{¶ 36} In their fifth assignment of error, appellants argue that the parties to the JEDZ failed to comply with the public hearing requirements in R.C. 715.691(D), which provides,

> Before the legislative authority of any of the contracting parties
> enacts an ordinance or resolution approving a contract to designate a joint
> economic development zone, the legislative authority of each of the
> contracting parties shall hold a public hearing concerning the contract and
> zone.  Each legislative authority shall provide at least thirty days public

---

[2] Although not referenced in their brief on appeal, in their opposition to appellees' motion for summary judgment, appellants submitted the affidavit of Anna Williams, an authorized custodian of records for Texas Roadhouse, Inc., which authenticated records of pay checks issued to employees for time worked in July and December 2014.  The number of paychecks issued was well over 100 for each pay period in both months.  In contrast, Kohli's affidavit indicates that she was informed by a manager over the phone that Texas Roadhouse, Inc., had fewer than 50 employees.  Similarly, in support of their motion for summary judgment, appellants submitted the affidavit of Larissa Sipprell, the Workforce Administration Manager for Best Buy Enterprise Services.  Sipprell's affidavit authenticated records showing that 80 employees were employed at Best Buy Store #247 in July 2014, and 110 during November to December 2014.  Notably, there is no indication that store #247 is located in the JEDZ.  In contrast, Kohli's affidavit states that she was informed in person that there were 60 employees at the store.  Nevertheless, neither Williams' affidavit nor Sipprell's affidavit states that the companies were willing and able to serve on the JEDRC, and thus the affidavits do not demonstrate that the companies were wrongfully excluded.

22.

notice of the time and place of the public hearing in a newspaper of general circulation in the municipal corporation or township. During the thirty-day period prior to the public hearing, all of the following documents shall be available for public inspection in the office of the clerk of the legislative authority of a municipal corporation that is a contracting party and in the office of the fiscal officer of a township that is a contracting party:

(1) A copy of the contract designating the zone;

(2) A description of the area or areas to be included in the zone, including a map in sufficient detail to denote the specific boundaries of the area or areas;

(3) An economic development plan for the zone that includes a schedule for the provision of any new, expanded, or additional services, facilities, or improvements.

A public hearing held under division (D) of this section shall allow for public comment and recommendations on the contract and zone. The contracting parties may include in the contract any of those recommendations prior to approval of the contract.

{¶ 37} In support of their assignment of error, appellants argue solely that the parties to the JEDZ failed to provide 30 days to review the *amended* JEDZ Contract and JEDZ Economic Development Plan. Springfield Township and the Village held public hearings on the proposed JEDZ in June 2014. Thereafter, on July 11, 2014, the JEDRC

23.

approved the JEDZ Economic Development Plan with one amendment. Prior to the amendment, Section 4(C)(3) of the plan read: "C. Holland may upon request of the JEDZ Board provide: * * * (3) Provide (sic) maintenance of a roundabout and McCord Rd. underpass right-of-way / ramp area." The amendment changed Section 4(C)(3) to state: "C. Holland may upon request of the JEDZ Board provide: * * * (3) Provide (sic) maintenance and improvements to public rights of way." Ten days later, on July 21, 2014, Springfield Township approved the proposed JEDZ Contract, which incorporated the JEDZ Economic Development Plan. The Village reviewed the JEDZ Contract on July 22, 2014, and proposed the addendum to clarify the fourth paragraph in Section 4.3 discussed in appellant's first assignment of error. The addendum was agreed to on July 29, 2014, and the JEDZ Contract and addendum were approved by the Village by emergency ordinance on the same day. Springfield Township did not separately pass an ordinance approving the addendum to the JEDZ Contract. Because the amended JEDZ Economic Development Plan and the JEDZ Contract with the addendum were not available for inspection for 30 days prior to a public hearing, appellants conclude that R.C. 715.691(D) was violated.

{¶ 38} We are not persuaded by appellants' argument. As identified by appellees, 715.691(D) does not require an additional 30 days of public inspection every time a change is made to the proposed contract. Indeed, the last sentence of R.C. 715.691(D) expressly provides that the contracting parties may include any recommendations prior to approval of the contract. Here, it is not in dispute that the JEDZ Contract, a description

24.

of the boundaries of the zone, and the JEDZ Economic Development Plan were available for public inspection for 30 days prior to a public hearing. Therefore, we hold that the parties to the JEDZ complied with R.C. 715.691(D), and our decision is not impacted by the fact that minor amendments and clarifications were made prior to the final approval of the JEDZ Contract.

{¶ 39} Accordingly, appellant's fifth assignment of error is not well-taken.

## 5. R.C. 715.691(E)

{¶ 40} In their sixth assignment of error, appellants assert that the JEDZ is invalid because Springfield Township did not submit the full resolution approving the JEDZ Contract, or any resolution approving the addendum, to the Board of Elections as required by R.C. 715.691(E). That section provides,

> After the public hearings required under division (D) of this section have been held and the economic development plan has been approved under division (D) of section 715.692 of the Revised Code, and before January 1, 2015, each contracting party may enact an ordinance or resolution approving the contract to designate a joint economic development zone. After each contracting party has enacted an ordinance or resolution, the clerk of the legislative authority of a municipal corporation that is a contracting party and the fiscal officer of a township that is a contracting party shall file with the board of elections of each county within which a contracting party is located a copy of the ordinance

or resolution approving the contract and shall direct the board of elections to submit the ordinance or resolution to the electors of the contracting party on the day of the next general, primary, or special election occurring at least ninety days after the ordinance or resolution is filed with the board of elections. If any of the contracting parties is a township, however, then only the township or townships shall submit the resolution to the electors. R.C. 715.691(E).

{¶ 41} In this case, Springfield Township did not submit a copy of the JEDZ Contract with the resolution, despite the fact that the resolution referred to it as an exhibit. However, it did submit a copy of the resolution itself, which is all that is required by the statute. Therefore, we hold that Springfield Township complied with R.C. 715.691(E).

{¶ 42} Accordingly, appellants' sixth assignment of error is not well-taken.

### 6. Adequacy of Consideration

{¶ 43} In their seventh and final assignment of error, appellants contend that the JEDZ Contract is void for lack of consideration under the general principles of contract law. Specifically, appellants argue that Springfield Township agreed in the contract only to provide the "usual and customary services" of road maintenance, fire protection, emergency medical services, and general administration. Because Springfield Township is already legally obligated to provide those services, appellants argue that Springfield Township has offered no consideration.

26.

**{¶ 44}** However, under general contract law, appellants are incidental beneficiaries to the JEDZ Contract and thus lack standing to challenge the adequacy of the contract's consideration. *See Huff v. FirstEnergy Corp.*, 130 Ohio St.3d 196, 2011-Ohio-5083, 957 N.E.2d 3, ¶ 11 (an incidental beneficiary "has no enforceable rights under the contract."). Furthermore, Springfield Township has provided consideration in that it has agreed under the JEDZ Contract to provide "expanded" public services, beyond those which it was already providing, and to "provide for the construction and improvement of such roads in the Township it deems appropriate to provide an improved transportation network to benefit the JEDZ." Therefore, we hold that the JEDZ Contract does not fail for lack of consideration.

**{¶ 45}** Accordingly, appellants' seventh assignment of error is not well-taken.

### IV. Conclusion

**{¶ 46}** For the foregoing reasons, we hold that appellants have standing to challenge the creation of the JEDZ. We further hold that the creation of the JEDZ meets the statutory requirements. Thus, we find that substantial justice has been done the parties complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellants are ordered to pay the costs associated with the appeal, and appellees are ordered to pay the costs associated with the cross-appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.       _____
                                                          JUDGE

Arlene Singer, J.      

                                _____
Thomas J. Osowik, J.                                   JUDGE
CONCUR.

                                _____
                                                            JUDGE

28.