[Cite as *Marcellino v. Nicastro*, 2022-Ohio-2736.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

| | |
|---|---|
| BIANCA MARCELLINO, | **CASE NO. 2021-G-0025** |
| Petitioner-Appellant, | |
| - v - | Civil Appeal from the Court of Common Pleas |
| MICHELLE NICASTRO, | |
| Respondent-Appellee. | Trial Court No. 2018 SP 000525 |

**O P I N I O N**

Decided: August 8, 2022
Judgment: Affirmed

*Michela J. Huth*, P.O. Box 17, Bolivar, OH 44612 (For Petitioner-Appellant).

*Patrick J. Thomas*, Ritzler, Coughlin & Paglia, Ltd., 1360 East 9th Street, 500 IMG Center, Cleveland, OH 44114 (For Respondent-Appellee).

MARY JANE TRAPP, J.

{¶1} The reasoning behind the sage advice of "good fences make good neighbors" resonates loudly in this case since underlying this appeal is a tumultuous history between two neighboring horse farms, replete with encroaching fences, wandering horses, dumped manure, dueling protection order petitions, and contempt motions.

{¶2} Appellant, Bianca Marcellino ("Ms. Marcellino"), appeals from the judgment of the Geauga County Court of Common Pleas, which awarded appellee, Michelle Nicastro ("Ms. Nicastro"), $35,000 in attorney fees and $2,221.70 in costs after granting

Ms. Nicastro's "Motion for Sanctions, Attorney Fees and Costs" following the trial court's denial of Ms. Marcellino's motion to show cause.

{¶3} Ms. Marcellino raises two assignments of error on appeal, in which she contends the trial court erred and abused its discretion when it imposed sanctions against her for the acts of her attorney and in finding that her lack of standing to file a motion to show cause warranted imposition of sanctions pursuant to R.C. 2323.51.

{¶4} After a careful review of the record and pertinent law, we find Ms. Marcellino's assignments of error to be without merit. First, the trial court found the claims, conduct, and efforts of Ms. Marcellino and her attorney, Greg Sasse ("Mr. Sasse"), were egregious and objectively frivolous, but inasmuch as the motion sought sanctions against Ms. Marcellino only, the trial court apparently apportioned the total amount of attorney fees between them and ordered Ms. Marcellino to pay roughly half of Ms. Nicastro's attorney fees. Thus, the court did not sanction Ms. Marcellino in lieu of her attorney but held her responsible for only half of the attorney fees incurred by Ms. Nicastro.

{¶5} Second, the trial court's findings support the sanctions award. Ms. Marcellino lacked standing to bring a motion to show cause based upon an alleged breach of a mediation settlement agreement. The record supports the finding that Ms. Marcellino knew at the time she filed her motion she no longer held an interest in the property that was the subject of the parties' mediation agreement. Further, because of an earlier court order, it was established that she had been prohibited from residing on any property with equine animals. Therefore, she had no horses that could wander, and she had no property interest affected by horses wandering between the adjoining properties.

2

{¶6} The trial court also correctly determined Ms. Marcellino's motion was not made in good faith under existing law; she did not have a good faith argument for an extension, modification, or reversal of existing law; and her claims were not supported by any evidence. Quite simply, when evaluated under the objective "reasonable attorney" standard, a standard to which a pro se litigant must also adhere, no reasonable person would have filed a motion to show cause for issues concerning property in which she held no interest, submitted an affidavit containing false statements lacking any evidentiary support, argued a party was in contempt for actions not included in the judgment, attempted to assert claims for others without any claim that she was personally harmed by an alleged action, and attempted to convince the court that the parties' mediation agreement was a civil protection order ("CPO") when by its own terms it was not to be so viewed.

{¶7} The judgment of the Geauga County Court of Common Pleas is affirmed.

## Substantive and Procedural History

{¶8} In 2016, the parties had adjacent horse farms and an ongoing property line dispute. Ms. Marcellino built a barn on her property to board horses. Ms. Nicastro did not live on her adjoining property. She rented the house on the property to a nonparty tenant, who had a telescope in the window of the house. In 2018, both parties filed petitions for civil stalking protection orders ("CPO") against the other. Ms. Nicastro also filed other CPO petitions against individuals associated with Ms. Marcellino.

### *The Mediation Agreement*

{¶9} In August 2018, the parties reached a mediated settlement memorialized in a written agreement, in which they acknowledged and agreed that "this Agreement does

3

Case No. 2021-G-0025

not have the full force and effect of a Civil Stalking Protection Order and is not enforceable as a protection order pursuant to R.C. 2903.214 or R.C. 2919.21." Ms. Marcellino was represented by Mr. Sasse when the agreement was reached.

{¶10} The parties further agreed that (1) Ms. Nicastro would ask the prosecutor to dismiss the trespassing charge that was filed against Ms. Marcellino; (2) Ms. Nicastro would remove any encroachment from the property line; (3) both parties would contain their animals on their own property; (4) contact between Ms. Marcellino and Ms. Nicastro was prohibited, which included persons on property owned by the other party; and (5) a party found in violation of the agreement would "pay the other party's attorney fees and all court costs." Ms. Marcellino, Ms. Nicastro, and Ms. Marcellino's father, Giancarlo Marcellino, signed the agreement.

{¶11} The resolution of the dueling CPOs was only a pause in the legal battles between the parties. It launched dueling motions to show cause and resulted in two protracted and convoluted motion hearings, which, unfortunately, we must detail in order to understand and evaluate the propriety of the sanctions that are the subject of this appeal.

### Ms. Nicastro's Motion to Show Cause

{¶12} Several months after the agreement was signed, Ms. Nicastro filed a motion to show cause and for an award of attorney fees and court costs with an attached affidavit. Ms. Nicastro alleged that Ms. Marcellino's horses came onto her property on several instances; that Giancarlo Marcellino intentionally dumped manure onto her front limestone riding ring; and that Ms. Marcellino directed profanities at her while Ms. Nicastro was leaving her own property.

4

**{¶13}** On February 20, 2019, while Ms. Nicastro's motion was pending, Ms. Marcellino transferred her interest in the parcel adjacent to Ms. Nicastro to her parents. In addition, pursuant to an order of the Chardon Municipal Court arising out of a criminal trespass case against Ms. Marcellino, she was not permitted to own, possess, care for, or reside on property with any equine animal on or after March 19, 2019. *See State v. Marcellino*, 2019-Ohio-4837, 149 N.E.3d 927 (11th Dist.), and *State v. Marcellino*, 11th Dist. Geauga Nos. 2019-G-0199 & 2019-G-0200, 2019-Ohio-3329.

**{¶14}** On March 30, 2019, Mr. Sasse, who represented Ms. Marcellino in that criminal trespass case, notarized an affidavit for Ms. Marcellino alleging various "violations" of the parties' agreement. On April 12, 2019, he sought leave to withdraw as counsel, which was denied. On April 15, 2019, one day before the hearing on Ms. Nicastro's motion, Ms. Marcellino, pro se, filed a motion to show cause and for an award of attorney fees, attaching the March 30, 2019, affidavit.

**{¶15}** A one-day hearing on Ms. Nicastro's motion to show cause was held before a magistrate. The magistrate found that the relationship between the parties "has been and remains acrimonious and antagonistic," that Ms. Nicastro failed to establish contempt by clear and convincing evidence, and that Ms. Nicastro's claims against Ms. Marcellino were barred by the doctrine of clean hands. The magistrate also found that Ms. Marcellino proved her impossibility defense because after Ms. Nicastro removed some, but not all, of her encroaching fencing, Ms. Marcellino could not put up a permanent fence. Further, while a dumped mixture, which included some manure, did fall onto Ms. Nicastro's property, Ms. Marcellino reasonably feared trespassing charges if she removed the mixture from Ms. Nicastro's property. Thus, the magistrate denied Ms. Nicastro's motion

5

to show cause and for attorney fees.  The trial court adopted the magistrate's decision over the objections of the parties.  Neither party appealed the court's judgment.

### Ms. Marcellino's Motion to Show Cause

{¶16}  A three-day hearing was held over the span of several months.  Multiple briefs were filed by the parties, including several filed by Ms. Marcellino, which were stricken from the record.  Mr. Sasse represented Ms. Marcellino during the hearing.

{¶17}  The hearing began in September 2019, and testimony continued in October and December 2019.  Willard Schade ("Mr. Schade"), Ms. Marcellino's property surveyor, testified that he surveyed the property line in November 2018 and found most of the encroachments had been removed, with the exception of a vinyl fence that was encroaching onto Ms. Marcellino's property, which was later transferred to her parents.

{¶18}  Ms. Marcellino testified that in 2016 she bought her property, which consisted of two lots.  On February 20, 2019, she "gifted" the lot adjacent to Ms. Nicastro to her parents via a quit-claim deed and "no longer owns that parcel."  Ms. Marcellino stipulated that at the time she filed her motion, she was neither the owner of the property with the encroaching fence, nor was she allowed to reside on the property adjacent to Ms. Nicastro.  She removed Ms. Nicastro's encroaching fence with her father while the police observed nine days after she filed her motion.  She could not identify the portion of fence she removed on various surveys and maps showed to her by her own attorney.  She also testified that in the criminal trespass case against her, the trial court granted several of her motions to continue until the case was finally dismissed in December 2018.

{¶19}  Over Ms. Marcellino's continuing objection, Tracey Fronk ("Ms. Fronk"), a victim advocate for Geauga County Police Prosecutor Victim Assistance Program,

6

testified as to the procedural delay in dismissing the trespass case, which involved multiple continuances requested by Ms. Marcellino until December 2019 when the prosecutor dismissed the case upon request. Ms. Nicastro's attorney requested that the prosecutor dismiss the charges on the date of the mediation agreement in August 2018. Ms. Fronk recalled a discussion with Ms. Nicastro that she did not want the charges to be dismissed.

{¶20} On the final hearing day, Ms. Marcellino again testified, in addition to Ms. Nicastro and Mark Bontrager, a fence installer from T & C Fence who installed fencing for both parties on various occasions. Ms. Marcellino described the psychological effects Ms. Nicastro's actions had on her mental health, which included seeing a psychiatrist and a counselor, and taking sleeping, antidepressant, and antianxiety medications. The parties disputed whether the testimony as to Ms. Marcellino's psychological treatment was admissible because she was not requesting such damages.

{¶21} Ms. Nicastro testified that the first time she heard that a portion of her fence was still encroaching on Ms. Marcellino's property was when the surveyor, Mr. Schade, testified on the first day of the hearing. From her understanding of the mediation agreement, she did not need to separate her property from Ms. Marcellino's so long as she contained her own animals. There was a portion of her fencing that she did take down, which caused Ms. Marcellino's animals to wander onto her property. She reported the incidents to the police, which she estimated occurred approximately five times. Thereafter, Mr. Sasse attempted to impeach Ms. Nicastro with her testimony from the earlier hearing on Ms. Nicastro's motion to show cause. The magistrate cautioned Mr. Sasse that he needed to abide by the rules of evidence.

7

**{¶22}** The magistrate instructed the parties to brief whether the hearing should continue to allow the presentation of more witnesses, along with other issues the parties wanted the court to consider, including admissibility of charges from the surveyor and Ms. Marcellino's alleged psychological harm.

**{¶23}** After several months of briefing, the magistrate issued her decision, denying Ms. Marcellino's motion to show cause and finding that Ms. Marcellino was as much at fault as Ms. Nicastro. More specifically and germane to the sanctions question before us, Ms. Marcellino lacked standing to bring the show cause motion since she did not own the property adjacent to Ms. Nicastro, and she was prohibited from owning any land with equine animals. Moreover, even if she had established standing, she did not establish contempt by clear and convincing evidence.

**{¶24}** The magistrate also found that if Ms. Nicastro wished to move for attorney fees or sanctions, the motion must be filed separately. The trial court adopted the magistrate's decision, and neither party filed an appeal from the trial court's judgment.

### Ms. Nicastro's Motion for Sanctions, Attorney Fees, and Costs

**{¶25}** Subsequently, Ms. Nicastro filed a "motion for sanctions, attorney fees, and costs," alleging that Ms. Marcellino violated R.C. 2323.51 by asserting allegations she did not have standing to assert and that were not grounded in law. As a result, Ms. Nicastro was forced to spend $65,725 in legal fees and $2,271.70 for transcripts and subpoena fees to defend herself.

**{¶26}** A one-day hearing was held before a magistrate, during which Ms. Nicastro's attorney, Patrick Thomas, as well as Lisa Braemer, an administrative assistant

8

for the Chesterland Township Police Department and custodian of its records, and Ms. Marcellino testified.

{¶27} The magistrate found that Ms. Marcellino's pro se affidavit, notarized by her attorney, Mr. Sasse, lacked evidentiary support, and that Ms. Marcellino and Mr. Sasse knew at the time the affidavit was created that the contentions were false. Further, the magistrate found Mr. Sasse did not seek to amend Ms. Marcellino's motion to show cause or dissuade his client from continuing the litigation. Thus, under the objective standard of R.C. 2323.51, no reasonable attorney would have pursued a contempt motion or attempted to convince the court that an agreement that by its own terms was not a CPO should be treated as one that included covering other family members and actions that did not personally harm Ms. Marcellino.

{¶28} Finding Ms. Marcellino's claims could not be supported by existing law or a reasonable extension, modification or reversal of existing law, the magistrate determined that the conduct, claims, and efforts of both Ms. Marcellino and Mr. Sasse were egregious and frivolous. The magistrate also noted that Ms. Marcellino and Mr. Sasse "should be personally familiar with this objective standard" because Ms. Marcellino was previously sanctioned for frivolous conduct, citing our decision, inter alia, affirming those sanctions in *Marcellino v. Geauga Humane Soc.*, 11th Dist. Geauga No. 2018-G-0180, 2019-Ohio-2093.

{¶29} The magistrate granted Ms. Nicastro's motion, noting that Ms. Nicastro sought sanctions only against Ms. Marcellino and not against Ms. Marcellino's attorney. The magistrate awarded Ms. Nicastro $35,000 in attorney fees (roughly half of the total

9

amount of fees found to be reasonable by the magistrate) and $2,221.70 in litigation expenses to be paid by Ms. Marcellino within one year of the date of entry of judgment.

{¶30} Ms. Marcellino filed objections to the magistrate's decision, in which she contended that she had a good faith belief that her motion had merit, that the basis for her belief was reasonable, and that she was seeking a remedy for her mental distress caused by Ms. Nicastro's actions. In addition, she claimed Ms. Nicastro was not entitled to attorney fees because she had unclean hands, i.e., Ms. Nicastro continually contacted various agencies such as Geauga Soil and Water Conservation District, the Chester Township Police Department, and the Geauga County Humane Society to report Ms. Marcellino.

{¶31} She also contended that standing should not have been an issue, arguing "[i]t was not frivolous to believe that standing would track closer to protection order cases than to public utility cases" (apparently a reference to a frivolous conduct case involving an oil well cited by the magistrate). She further asserted she had a "good faith basis to seek a lawful objective, i.e., a remedy to her mental distress," and "such a belief was reasonable and therefore the motion was not filed merely to harass." Thus, she asserted that the law of CPOs should be treated expansively and that she had standing to seek protection for herself and her family from violation of the parties' agreement and to protect herself from future violations.

{¶32} Ms. Nicastro filed a response to Ms. Marcellino's objections, arguing that Ms. Marcellino failed to set forth her objections pursuant to Civ.R. 53 because she failed to identify her objections with factual findings from the hearings. Further, Ms. Marcellino's

10

objections were simply reiterations of her closing argument and her previous briefs, one of which was stricken from the record.

**{¶33}** The trial court adopted the magistrate's decision granting Ms. Nicastro's motion for attorney fees and expenses and entered the monetary judgment against Ms. Marcellino.

**{¶34}** Ms. Marcellino raises two assignments of error on appeal:

**{¶35}** "[1.] The trial court erred and abused its discretion when it imposed sanctions upon Appellant Bianca Marcellino for the acts, or lack of acts, of her attorney.

**{¶36}** "[2.] The trial court erred and abused its discretion when it held that the lack of standing was clear under existing law, and that Appellant did not have a good faith argument for an extension, modification, or reversal of existing law."

### Standard of Review

**{¶37}** On appeal, a trial court's adoption of a magistrate's decision will not be reversed unless the trial court abused its discretion in adopting the decision. *Baltes v. Baltes*, 11th Dist. Trumbull No. 2011-T-0117, 2012-Ohio-4890, ¶ 19.

**{¶38}** An abuse of discretion is the "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004). When an appellate court is reviewing a pure issue of law, the mere fact that the reviewing court would decide the issue differently is enough to find error. *Id.* at ¶ 67. By contrast, where the issue on review has been confided to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error. *Id.*

11

Case No. 2021-G-0025

## R.C. 2323.51

{¶39} R.C. 2323.51 serves to deter abuse of the judicial process by penalizing sanctionable conduct that occurs during litigation. *Zamlen-Spotts v. Keco*, 2019-Ohio-5048, 150 N.E.3d 363, ¶ 57 (11th Dist.). The statute was designed to chill egregious, overzealous, unjustifiable, and frivolous action. *Ferron v. Video Professor, Inc.*, 5th Dist. Delaware No. 08-CAE-09-0055, 2009-Ohio-3133, ¶ 45. In determining whether conduct is frivolous, courts must carefully apply the statute so that legitimate claims are not chilled. *Id.*

{¶40} Pursuant to R.C. 2323.51(B)(1), "at any time not more than thirty days after the entry of final judgment in a civil action or appeal, any party adversely affected by frivolous conduct may file a motion for an award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with a civil action * * *." The award may be made "against a party, the party's counsel of record, or both." R.C. 2323.51(B)(4).

{¶41} "Conduct" includes, in relevant part, "[t]he filing of a civil action, the assertion of a claim, defense, or other position in connection with a civil action, the filing of a pleading, motion, or other paper in a civil action, * * * or the taking of any other action in connection with a civil action." R.C. 2323.51(A)(1)(a).

{¶42} "Frivolous conduct" means the conduct of a party or the party's attorney that satisfies any of the following:

{¶43} "(i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.

12

{¶44} "(ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

{¶45} "(iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

{¶46} "(iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief."  R.C. 2323.51(A)(2)(a)(i) through (iv).

{¶47} R.C. 2323.51 uses an objective standard in determining whether sanctions may be imposed for frivolous conduct.  *Stevenson v. Bernard*, 11th Dist. Lake No. 2006-L-096, 2007-Ohio-3192, ¶ 41.  Thus, a finding of frivolous conduct under R.C. 2323.51 is decided without inquiry as to what the individual knew or believed.  *Omerza v. Bryant & Stratton*, 11th Dist. Lake No. 2006-L-147, 2007-Ohio-5216, ¶ 15.

### Sanctions Against a Party

{¶48} In Ms. Marcellino's first assignment of error, she contends the trial court erred in awarding sanctions against her for the acts of her attorney.

{¶49} R.C. 2323.51(B)(4) provides that an award of attorney fees "may be made against a party, the party's counsel of record, or both."

{¶50} By allowing the imposition of sanctions against the party, attorney, or both, the statute "'provides a mechanism for the court to place blame directly where fault lies.'" *Southard Supply, Inc. v. Anthem Contractors, Inc.*, 10th Dist. Franklin No. 16AP-545, 2017-Ohio-7298, ¶ 36, quoting *Rindfleisch v. AFT, Inc.*, 8th Dist. Cuyahoga Nos. 84551,

13

84897, & 84917, 2005-Ohio-191, ¶ 19; *accord Ron Scheiderer & Assocs. v. London*, 81 Ohio St.3d 94, 97, 689 N.E.2d 552 (1998) (by authorizing an award against a party, its counsel, or both, "[t]he General Assembly gave courts the discretion to hold those engaging in frivolous conduct responsible for their actions"); *Sain v. Roo*, 10th Dist. Franklin No. 01AP-360, 2001 WL 1263665, *8 (Oct. 23, 2001) ("The objective of the statute is to impose sanctions on the person actually responsible for the frivolous conduct").

{¶51} An appellate court will not reverse the trial court's allocation of the responsibility for the payment of attorney fees absent an abuse of discretion. *Southard Supply, Inc.* at ¶ 36. *See also Lane v. Griffith*, 11th Dist. Ashtabula No. 2019-A-0041, 2019-Ohio-3442, ¶ 31 ("Since R.C. 2323.51(B)(1) grants the court discretion in awarding attorney fees to a party adversely affected by frivolous conduct, a court's factual determination regarding the imposition of sanctions will not be reversed absent an abuse of discretion").

{¶52} As our examination of the magistrate's decision reveals, contrary to Ms. Marcellino's assertions, the magistrate found the conduct of Ms. Marcellino and her attorney to be egregious and objectively frivolous. The magistrate, while not explicitly apportioning the award of sanctions equally against them, ordered Ms. Marcellino to pay roughly half of Ms. Nicastro's reasonable attorney fees and all of the litigation expenses. *See Norris v. Philander Chase Corp.*, 5th Dist. Knox No. 11-CA-10, 2011-Ohio-6545, ¶ 44 (declining to find law firm jointly and severally liable for the award of sanctions imposed on an individual attorney in the firm since appellee did not request an award against it in either of its motions and there was no demonstration in the record it was *sui juris*).

14

{¶53} In *Lloyd v. Thornsbery*, 11th Dist. Portage No. 2019-P-0108, 2021-Ohio-240, we similarly upheld an award of sanctions where appellant's actions before, during, and after trial constituted frivolous conduct. *Id.* at ¶ 61. For instance, the appellant knew or should have known that her case had no merit, that she could not prove her case, and that she had insufficient evidence. *Id.* at ¶ 54. Further, she filed dozens of motions and other documents pro se, even though she was represented by counsel, which included irrelevant information and served no legitimate purpose. *Id.* at ¶ 56.

{¶54} Ms. Marcellino pursued a motion to show cause against Ms. Nicastro for violations of an agreement in which she no longer had an interest. Prior to her pro se filing, Ms. Marcellino transferred her property interests to her parents, and was prohibited, by court order, from owning, caring for, or residing with any equine animals. Therefore, the only conclusion that can be drawn from the circumstances is that the factual contentions in her affidavit were knowingly false. Her frivolous motion resulted in three days of hearings held over a span of several months with hundreds of pages of filings and took over a year to conclude. Quite simply, Ms. Marcellino is not paying sanctions in lieu of her attorney, but instead paying her proportionate share that represents her responsibility for a frivolous motion in which she was an active instigator and participant.

{¶55} In support, Ms. Marcellino cites to *P.K. Lumber Co. v. Investors Title Agency, Inc.*, 2d Dist. Montgomery No. 12184, 1991 WL 6326 (Jan. 23, 1991), where the Second District modified the trial court's judgment to substitute counsel in place of the appellant as the appropriate person responsible for the payment of the appellee's attorney's fees. *Id.* at *4. The court did so because the basis of the award was that the complaint, filed and prepared by counsel, could not be supported by the existing law or a

15

reasonable extension, modification, or reversal of existing law. *Id.* Further, the court did not find the appellant filed its action to harass or maliciously injure the appellee, and appellant's counsel accepted full responsibility for the complaint and the resultant litigation at the oral hearing on appeal. *Id.*

{¶56} The facts in *P.K. Lumber* are not similar to the circumstances presented here, and we do not find it to have any bearing on the instant case. Ms. Marcellino's conduct was found to be egregious and objectively frivolous. She filed the frivolous motion pro se and never backed away from her determined course of action. The burden of any sanction should fall upon those actually responsible for the frivolous conduct. *Estep v. Kasparian*, 79 Ohio App.3d 313, 317, 607 N.E.2d 109 (10th Dist.1992).

{¶57} Ms. Marcellino's first assignment of error is without merit.

### Lack of Standing

{¶58} In Ms. Marcellino's second assignment of error, she contends the trial court erred when it held that her lack of standing to file her motion to show cause was clear under existing law and that she did not have a good faith argument for an extension, modification, or reversal of existing law.

{¶59} "'Under R.C. 2323.51, the court must first determine whether the actions of the party to be sanctioned constitute "frivolous conduct." If the court determines that such actions are frivolous conduct, the court must then determine the amount, if any, of attorney fees that are warranted to the party who was adversely affected by the frivolous conduct.'" *Lane*, at ¶ 29, quoting *Findlay Ford Lincoln Mercury v. Huffman*, 3d Dist. Hancock No. 5-03-28, 2004-Ohio-2797, ¶ 10; *see* R.C. 2323.51(B).

16

Case No. 2021-G-0025

{¶60} The trial court's initial decision whether conduct was frivolous is a factual determination, which we will not disturb where the trial court's findings are supported by competent, credible evidence. *Keith-Harper v. Lake Hosp. Sys., Inc.*, 2017-Ohio-7361, 96 N.E.3d 823, ¶ 24 (11th Dist.).

{¶61} "[A] determination of '[w]hether a pleading is warranted under existing law or can be supported by a good-faith argument for an extension, modification, or reversal of existing law is a question of law, peculiarly within the competence of an appellate court.'" *Lane* at ¶ 30 quoting *Findlay Ford Lincoln Mercury v. Huffman*, 3d Dist. Hancock No. 5-03-28, 2004-Ohio-2797, ¶ 11. Therefore, we are not bound by the trial court's determination on this particular issue. *Id.*

{¶62} We note at the outset that Ms. Marcellino did not appeal the trial court's denial of her motion to show cause or its finding that she lacked standing. Not only did the magistrate determine that Ms. Marcellino lacked standing because she failed to show injury, causation, and redressability, but the magistrate also determined that she failed to show contempt by clear and convincing evidence, i.e., that Ms. Nicastro violated any provision of the parties' agreement/court order. In addition, the magistrate found that "Ms. Marcellino's own conduct, especially in removing Ms. Nicastro's fence after her Motion was filed, is reprehensible, grossly inequitable, or unconscionable."

{¶63} Ms. Marcellino exhibits confusion over the concept of standing, presenting an incomprehensible argument about the magistrate following the law in public utility cases. Standing is a necessary requirement in all cases. The Supreme Court of Ohio explained in *Clifton v. Blanchester*, 131 Ohio St.3d 287, 2012-Ohio-780, 964 N.E.2d 414.

17

{¶64} "'It is well established that before an Ohio court can consider the merits of a legal claim, the person seeking relief must establish standing to sue.' *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 469, 715 N.E.2d 1062. "'Standing" is defined at its most basic as "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right."' *Ohio Pyro Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, 875 N.E.2d 550, ¶ 27, quoting Black's Law Dictionary (8th Ed.2004) 1442. ""'[T]he question of standing depends upon whether the party has alleged such a "personal stake in the outcome of the controversy * * *"' as to ensure that the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution."' *Id.*, quoting *State ex rel. Dallman v. Franklin Cty. Court of Common Pleas* (1973), 35 Ohio St.2d 176, 178-179, 64 O.O.2d 103, 298 N.E.2d 515, quoting *Sierra Club v. Morton* (1972), 405 U.S. 727, 732, 92 S.Ct. 1361, 31 L.Ed.2d 636, quoting *Baker v. Carr* (1962), 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663, and *Flast v. Cohen* (1968), 392 U.S. 83, 101, 88 S.Ct. 1942, 20 L.Ed.2d 947." *Id.* at ¶ 15.

{¶65} To succeed in establishing standing, plaintiffs must show that they suffered (1) an injury, (2) that is fairly traceable to the defendant's allegedly unlawful conduct, and (3) likely to be redressed by the requested relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). These three factors—injury, causation, and redressability—constitute "the irreducible constitutional minimum of standing." *Id.* at 560; *see also Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 922, ¶ 22.

Case No. 2021-G-0025

{¶66} There is no question Ms. Marcellino lacked standing to file a motion to show cause against Ms. Nicastro for violating their agreement, which concerned their adjoining properties at the time the agreement was made. Ms. Marcellino transferred her interest in the property and was prohibited by court order from owning any equine property at the time she filed her motion pro se, which she claimed was supported by an affidavit containing false averments. "A finding of frivolous conduct under R.C. 2323.51 is decided without inquiry as what the individual knew or believed." *Marcellino v. Geauga Humane Soc.*, *supra*, at ¶ 26. Instead, a finding of frivolous conduct under R.C. 2323.51 uses an objective standard and asks whether a reasonable lawyer would have filed action or continued to pursue the claims in light of existing law or facts in a particular case. *Id.*

{¶67} A review of Ms. Marcellino's contentions reveal they lack evidentiary support and could not have been made in good faith. Firstly, Ms. Marcellino alleged that Ms. Nicastro violated the parties' agreement by not requesting dismissal of the trespass charge. Ms. Nicastro's conversations with Ms. Fronk, however, were not conversations with the prosecutor, and Ms. Nicastro's attorney sent a letter to the prosecutor on the date the mediation agreement was signed requesting the charges be dismissed. Secondly, any encroaching fencing was on property owned by Ms. Marcellino's parents and, at the hearing, Ms. Marcellino was unable to compare and contrast survey documents and identify points of encroachment. Thirdly, Ms. Marcellino did not own and was prohibited from owning any property with any equine animal, so she had no horses to wander and she had no interest affected by horses wandering between the adjoining properties. Fourthly, Ms. Marcellino failed to produce any alleged customers who were affected by

19

Ms. Nicastro's signage, which she alleged was posted on Ms. Nicastro's barn in such a way that it was only visible to those on her property.

{¶68} In addition, Ms. Marcellino attempted to argue that the parties' mediation agreement had the similar effect and force of a CPO, even though the agreement specifically stated that "this Agreement does not have the full force and effect of a Civil Stalking Protection Order and is not enforceable as a protection order pursuant to R.C. 2903.214 or R.C. 2919.21."

{¶69} Courts have upheld the imposition of sanctions for frivolous conduct where, as here, the action was based on suspicion and not supported by any evidence.

{¶70} In *Stevenson*, *supra*, this court upheld the trial court's finding that appellant engaged in frivolous conduct because she filed the action based solely on her assumptions and suspicions and without good ground or any investigation, knowing she had no evidence against the appellees. *Id.* at ¶ 48. Further, the appellant maintained the action for several months after her sole witness told her she had no evidence to support her allegations. *Id.* By maintaining the action with no factual basis, the appellant forced appellees to retain counsel to defend the suit, to file a motion to dismiss, and to file a reply brief to her brief in opposition, in which she continued to maintain the appellees' liability without any factual basis. *Id.* at ¶ 55.

{¶71} Likewise, in *Masturzo v. Revere R.d. Synagogue*, 98 Ohio App.3d 347, 648 N.E.2d 582 (9th Dist.1994), the Ninth District affirmed the trial court's finding that appellant's suit was frivolous where the appellant relied on questionable information in its complaint and then failed to dismiss a defendant several months after it learned the defendant did not have an interest in the property. *Id.* at 353. *See also Crooks v. Consol.*

20

*Stores Corp.,* 10th Dist. Franklin No. 98AP-83, 1999 WL 52981, *4 (Feb. 4, 1999) ("The failure to conduct a reasonable investigation of the facts and the law of a claim prior to filing a complaint may constitute frivolous conduct * * *").

{¶72} Thus, it is clear under these circumstances that the trial court did not err in finding that Ms. Marcellino's motion to show cause was not warranted under existing law and that she did not have a good faith argument for an extension, modification, or reversal of existing law. Quite simply, no reasonable person would have filed and litigated a motion to show cause for issues concerning property he or she did not own, and there is no good faith legal argument that would give Ms. Marcellino a redressable injury as a party. The frivolous conduct statute was designed to provide relief in a case like this.

{¶73} Ms. Marcellino's second assignment of error is without merit.

{¶74} The judgment of the Geauga County Court of Common Pleas is affirmed.


THOMAS R. WRIGHT, P.J.,

JOHN J. EKLUND, J.,

concur.

21

Case No. 2021-G-0025