[Cite as *Sood v. Rivers*, 2023-Ohio-3417.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| VINOY C. SOOD, et al., | **CASE NO. 2023-T-0022** |
| Plaintiffs-Appellees, | |
| - vs - | Civil Appeal from the<br>Warren Municipal Court |
| DONOVAN RIVERS, et al., | |
| Defendants-Appellants. | Trial Court No. 2022 CVG 001007 |

**O P I N I O N**

Decided: September 25, 2023
Judgment: Reversed and remanded

*Thomas G. Carey*, Harrington, Hoppe & Mitchell, Ltd., 108 Main Avenue, S.W., Suite 500, Warren, OH 44481 (For Plaintiffs-Appellees).

*William M. Flevares*, Flevares Law Firm, LLC, 1064 Niles-Cortland Road, N.E., Warren, OH 44484 (For Defendants-Appellants).

MARY JANE TRAPP, J.

{¶1} The instant appeal arises from a land installment contract dispute and whether the appellants, Donovan Rivers ("Mr. Rivers") and Roberta Hileman (collectively the "vendees"), paid at least 20% of the principal to avoid forfeiture and restitution of the property pursuant to R.C. 5313.07 and R.C. 5313.08. The magistrate's decision, which the trial court adopted, found the vendees paid less than 20% of the principal and were

in breach of the land contract. It concluded forfeiture was proper and ordered restitution in favor of appellee, Vinoy Sood ("Mr. Sood").[1]

{¶2} The vendees appeal from the judgment of the Warren Municipal Court that denied their "Objections to Magistrate's Decision" and "Supplement to Objections to Magistrate's Decision."

{¶3} The vendees raise three assignments of error, contending (1) the trial court erred as a matter of law when it determined they had not paid 20% of the principal owed on the land contract; (2) the trial court rendered a judgment against the manifest weight of the evidence when it miscalculated the amount of principal paid; and (3) Mr. Sood improperly assessed late fees, which resulted in an error in the calculation of the paid principal.

{¶4} After a thorough review of the record and pertinent law, we find the vendees' second assignment of error to have merit and is dispositive of this appeal. Our review of the magistrate's decision and the trial court's judgment entries adopting the magistrate's decision and overruling the vendees' objections/supplemental objections reveal there are no factual findings as to the magistrate's calculation of the paid principal, nor is it evident from the record. Thus, we cannot find the manifest weight of the evidence supports the trial court's judgment.

{¶5} Since the 20% issue is the linchpin to resolving this case, and we cannot ascertain the amount of paid principal (and the magistrate's calculation) from the record, we reverse and remand for the trial court to conduct an independent, de novo review of

---

1. Mr. Sood's wife, Krishna, quitclaimed her interest in the property before her death; thus, Mr. Sood is the sole owner of the property.

the magistrate's decision and the vendees' objections/supplemental objections and to take additional evidence, if necessary.

**{¶6}** The judgment of the Warren Municipal Court is reversed and remanded in accordance with this opinion.

### Substantive and Procedural History

**{¶7}** In June 2022, Mr. Sood, the vendor, filed a complaint for forfeiture of a land installment contract against the vendees. In May 2019, Mr. Sood agreed to sell the property located at 285 North Road, N.E., Warren, Ohio 44483, to the vendees for $206,500, which included a $28,000 deposit, plus a 7% per annum interest rate on the remainder. The parties further agreed monthly installments were payable on the first day of the month, beginning June 1, 2019, until December 1, 2019, with a balloon payment (the lump sum remainder of the principal) due on January 3, 2022.

**{¶8}** Mr. Sood alleged the vendees were in breach of the contract because they failed to make timely payments, and they paid an additional $2,000 on January 3, 2022, instead of the balloon payment that was due. Since the contract was in effect for less than five years and the vendees paid less than 20% of the principal, Mr. Sood alleged he was entitled to forfeiture and restitution pursuant to R.C. 5313.08.

### The Land Installment Contract

**{¶9}** Per the contract, the vendees paid a deposit of $28,000, which left a principal balance of $178,500. The monthly payments, due on the first of each month, consisted of principal and interest ($1,383.91), real estate taxes ($181), and a homeowner's assessment fee ($427), for a total of $1,991.91. The contract further provided that should the taxes and homeowner's assessment fee increase or decrease,

3

Case No. 2023-T-0022

the monthly payment would be adjusted. Taxes were increased in April 2021, raising the monthly payment to $2,090.24.

{¶10} The contract dictated how the monthly payments would be apportioned: "Said payments shall be applied first to the real estate taxes and the Homeowner's Assessment, and then to interest and the balance to principal, interest to be calculated and compounded on the due date of each month and each time a payment is made by the Vendees or an addition is made to principal as prescribed herein. In the event Vendors do not receive the monthly payment by the fifth (5th) day of the month, Vendees will be charged and agrees to pay a late charge equal to ten percent (10%) of the monthly payment, which, when assessed, will be added to the principal. Additional partial payments or entire payment of the principal may be made at any time, without prepayment penalty. However, any prepayment prior to the final payment must be in excess of Forty Thousand Dollars ($40,000.00). Entire balance is due and payable in full on January 3, 2022."

**Magistrate's Hearings**

{¶11} In July 2022, a hearing was held before the magistrate. The parties agreed to three stipulations: (1) the parties entered into a land contract with a purchase price of $206,500; (2) the vendees missed at least one payment; and (3) the notice of forfeiture was proper. The magistrate found the issue to be determined was how much had been paid on the land contract, i.e., whether it was more than or less than 20%, which would allow the forfeiture action to proceed, and ordered the parties to do an accounting.

{¶12} In August 2022, the magistrate held a second hearing, at which Mr. Sood and Mr. Rivers testified. Mr. Sood entered into evidence an amortization table of the

4

payments made ("Exhibit E"). Mr. Rivers contested the exhibit, noting that two payments were missing from June and July 2019. He entered into evidence 30 monthly bank statements that included check images reflecting 30 monthly payments, including for those two months.

{¶13} There was much confusion between the parties as to how many payments were due (and paid) under the contract and how to apply the January 3, 2022, payment. Mr. Rivers claimed Mr. Sood had sent him an email confirming he had paid $39,198.52. The magistrate inquired why Exhibit E did not reflect that $39,198.52 had been paid on the principal. Mr. Sood told the court his amortization table was incorrect, and he agreed $39,198.52 (18.98% of the purchase price) had been paid.

{¶14} The magistrate also questioned the increase in the monthly payments. Mr. Sood explained the real estate taxes increased and the monthly real estate payment was adjusted from $181 to $279. In addition, Mr. Sood's attorney clarified that some of the monthly payments were under $2,000 with an additional $100 payment because the parties used a Zelle (a digital payment network) account to transfer funds that would only accept transfers up to $2,000.

{¶15} Subsequent to the hearing, Mr. Sood filed a supplemental exhibit ("Exhibit F") with an updated table, reflecting the two missing payments and allocating them accordingly. The table accounted for 31 payments (June 2019 – December 2021), plus the January 2022 payment, for a total of 32 payments. However, the total paid principal documented in the table did not match the amount of paid principal to which the parties agreed at the hearing. Thus, the table showed that $38,389.18 of the principal was paid

($28,000 deposit + $10,389.18 monthly payments, or 18.59% of the purchase price of $206,500).

{¶16} The vendees failed to file a response despite the magistrate granting them leave to do so.

**The Magistrate's Decision**

{¶17} In September 2022, the magistrate issued findings of fact and conclusions of law, in which it found the land contract ran from June 1, 2019, to January 3, 2022. The magistrate reviewed Mr. Sood's Exhibit E, noting that neither party disputed the allocation of the monthly payments but that the table consisted of only 30 payments. Further, at the hearing, Mr. Sood agreed the total amount of payments made on the contract was $39,198.52 as of January 1, 2022.

{¶18} The magistrate also reviewed that the vendees alleged the June and July 2019 payments, which were not listed on Exhibit E, should be credited to reduce the principal since they are "additional payments." They argued this would bring the total principal paid to more than $41,300, or 20%, requiring a dismissal of the present action.

{¶19} The magistrate noted Mr. Sood supplemented the record after the hearing with Exhibit F, which included the two payments from June and July and allocated them accordingly. Thus, Mr. Sood argued, even with the two missing payments, the vendees did not pay more than 20% of the purchase price.

{¶20} The magistrate found the language of the contract was unclear as to how additional payments were to be applied.

{¶21} The magistrate concluded from the evidence, specifically the land contract, that at least 31 payments were required, and that 32 payments were made. Thus, at

6

best, there was only one extra payment of $2,000. Even crediting the vendees with $2,000 off the principal for that payment, the amount did not meet the 20% threshold ($39,198.52 + $2,000 = $41,198.52, or 19.95% of the principal). Thus, the vendees were in breach of the land contract and forfeiture was proper.

{¶22} On the same day, "after independent review," the trial court adopted the finding of the magistrate and affirmed the judgment. The court ordered the writ of restitution to issue.

{¶23} At the end of September 2022, the case was stayed due to the vendees' bankruptcy action.

**Objections to the Magistrate's Decision**

{¶24} In January 2023, after the vendees' bankruptcy case was dismissed, the vendees filed objections to the magistrate's decision. The vendees objected to the magistrate's calculation of the principal paid and attached an amortization table of the payments made from June 2019 to December 2021. The table reflected that they paid $39,606.50 of the principal. The vendees further argued the additional January 2022 payment should be applied to the principal because it could not be considered a "prepayment" under the terms of the contract and any ambiguity should be interpreted against the drafter, which in this case was Mr. Sood and his attorney. Thus, the correct calculation should be $39,606.50 + $2,000 = $41,606.50, or 20.14% of the principal.

{¶25} The vendees objected to the magistrate's reliance on Mr. Sood's supplemental table (Exhibit F), which they alleged was inaccurate, especially as it pertained to late fees. In addition to objecting to the contract's provision on late fees (applying 10% of the monthly payment to the principal), they also objected to the late fees

7

as being either improper or excessive. More specifically, Exhibit F reflects a late fee was assessed on January 3, 2022, even though that payment was not a "monthly payment"; the July 2019 late fee was improper because the payment was received on July 2, 2019; and excessive late fees were assessed in March, July, and October 2021 because Mr. Sood did not account for the increased monthly payment due to the increase in real estate taxes.

{¶26} Lastly, the vendees noted they offered other evidence at trial that went to the credibility of Mr. Sood, which included Mr. Sood's failure to disclose a lawsuit against the development for a faulty foundation in one of the units, thus obstructing their ability to obtain financing, and a $10,000 payment to Mr. Sood from the condominium association that was supposed to be held in escrow for foundation repairs, if needed.

{¶27} After the transcript was filed, the vendees filed supplemental objections to the magistrate's decision. They again contended the magistrate's calculation of the paid principal was incorrect and pointed to Mr. Sood's testimony from the second hearing, in which he agreed the paid principal was $39,198.52. They further contended there was a monthly payment that was not accounted for (with an appropriation of $350 to the paid principal). Thus, the correct calculation should be $39,198.52 + $350 + $2,000 for a total of $41,548.52, or 20.12% of the principal.

{¶28} Without further explanation, the trial court denied the vendees' objections and supplemental objections, terminated the stay of execution of the writ of restitution, and ordered the eviction to proceed.

{¶29} The vendees raise three assignments of error for our review:

8

**{¶30}** "[1.] The Trial Court erred as a matter of law when it determined that Rivers and Hileman had not paid 20% of the principal owed on the land contract and thus erred in ruling that Appellees were entitled to a forfeiture of said contract.

**{¶31}** "[2.] The Trial Court rendered a judgment against the manifest weight of the evidence when it miscalculated the amount of principal paid by Rivers and Hileman on the land contract.

**{¶32}** "[3.] Appellees improperly assessed late fees, which resulted in an error in the calculation of the amount of principal paid by Rivers and Hileman."

### Standard of Review

**{¶33}** Whether or not objections are timely, a trial court may adopt or reject a magistrate's decision in whole or in part, with or without modification. Further, the court may hear a previously referred matter, take additional evidence, or return a matter to the magistrate. Civ.R. 53(D)(4)(b). In addition, when ruling on objections and "undertak[ing] an independent review," the court may hear additional evidence, but it may refuse to do so unless the objecting party can demonstrate that it "could not, with reasonable diligence, have produced that evidence for consideration by the magistrate." Civ.R. 53(D)(4)(d).

**{¶34}** "When reviewing a magistrate's decision pursuant to Civ.R. 53[(D)(4)], a trial court does not sit in the position of a reviewing court; rather, the trial court must conduct a *de novo* review of the facts and conclusions contained in the magistrate's decision. *Inman v. Inman* (1995), 101 Ohio App.3d 115, 117-118. As the ultimate finder of fact, the trial court must make its own factual determinations through an independent analysis of the issues and should *not* adopt the findings of the magistrate unless the trial court fully agrees with them. *Id.* The trial court's role is to determine whether the

9

magistrate has properly determined the factual issues and appropriately applied the law, and, if the magistrate has failed to do so, the trial court must substitute its judgment for that of the magistrate. *Id.* Magistrates do not have the authority to render final judgments; therefore, the trial court remains responsible to critically review and verify the work of the magistrate to determine if the magistrate's findings of fact are sufficient to support the conclusions of law. *Quick v. Kwiatkowski* (Aug. 3, 2001), Montgomery App. No. 18620, [2001 WL 871406], *[3]. A trial court may also come to a different legal conclusion if that conclusion is supported by the magistrate's findings of fact. *Wade v. Wade* (1996), 113 Ohio App.3d 414, 419." (Emphasis sic.) *Tulley v. Tulley*, 11th Dist. Portage No. 2000-P-0044, 2001 WL 1216974, *4 (Oct. 12, 2001); *see* Civ.R. 53(D)(4)(d).

{¶35} Our review of the trial court's judgment is more deferential. Thus, on appeal, a trial court's adoption of a magistrate's decision will not be reversed unless the trial court abused its discretion in adopting the decision. *Marcellino v. Nicastro*, 11th Dist. Geauga No. 2021-G-0025, 2022-Ohio-2736, ¶ 37.

{¶36} An abuse of discretion is the "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004). When an appellate court is reviewing a pure issue of law, the mere fact that the reviewing court would decide the issue differently is enough to find error. *Id.* at ¶ 67. By contrast, where the issue on review has been confided to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error. *Id.*

10

**Land Installment Contracts**

{¶37} The statutory scheme governing land installment contracts for residential dwellings is contained in Chapter 5313 of the Revised Code. A "land installment contract" is an "executory agreement which by its terms is not required to be fully performed by one or more of the parties to the agreement within one year of the date of the agreement and under which the vendor agrees to convey title in real property located in this state to the vendee and the vendee agrees to pay the purchase price in installment payments, while the vendor retains title to the property as security for the vendee's obligation." R.C. 5313.01(A).

{¶38} R.C. Chapter 5313 has been described as "'essentially a "consumer protection law * * *."'" *Howard v. Temple*, 172 Ohio App.3d 21, 2007-Ohio-3074, 872 N.E.2d 1260, ¶ 9 (4th Dist.), quoting *Albright v. Cochran*, 5th Dist. Morrow No. CA-613, 1984 WL 4479, *2 (Mar. 2, 1984). It is "intended to prevent a 'windfall to a vendor who has previously collected substantial sums under a land contract and/or has actually recovered the property.'" *Id.*, quoting *Farkas v. Bernard*, 10th Dist. Franklin No. 95APE10-1365, 1996 WL 257455, *4 (May 16, 1996). As a result, "upon an election of forfeiture, the statutes limit a vendor's remedies." *Id.*, citing *Koehler v. Paniagua*, 3d Dist. Hancock No. 5-02-64, 2003-Ohio-1972, ¶ 9.

{¶39} If the vendee defaults under the contract and fails to cure within 30 days, the vendor may pursue one of two courses of action to regain possession of the property. R.C. 5313.05. The first course of action occurs when a vendee defaults on a land installment contract that has been in effect for less than 5 years. R.C. 5313.08 permits a vendor to bring an action for forfeiture of the vendee's rights in the contract and for

11

restitution of the property. *Am. Servicing Corp. v. Wannemacher*, 2014-Ohio-3984, 19 N.E.3d 566, ¶ 38 (3d Dist.). However, if the contract has been in effect for more than 5 years, or if the vendee has paid more than 20% of the purchase price, a vendor must pursue the second course of action and may only recover possession of his property by a foreclosure proceeding and judicial sale of the foreclosed property. R.C. 5313.07.

**Manifest Weight of the Evidence**

{¶40} We address the vendees' second assignment of error first because it is dispositive of this appeal. In their second assignment of error, the vendees contend the trial court's judgment is against the manifest weight of the evidence because the magistrate miscalculated the amount of paid principal.

{¶41} The weight of the evidence concerns "'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "'The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *see State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25 ("a reviewing court asks whose evidence is more persuasive").

{¶42} It is well settled that, in considering a challenge to the weight of the evidence, a reviewing court must consider all the evidence in the record, the reasonable

inferences that can be drawn therefrom, and the credibility of witnesses. *Golubski v. U.S. Plastic Equip., LLC*, 11th Dist. Portage No. 2015-P-0001, 2015-Ohio-4239, ¶ 43. The trier of fact, however, is in the best position to weigh the evidence and assess the credibility of witnesses. *Id.*; *see Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶43} Our review of the magistrate's decision and the trial court's judgment entries adopting the magistrate's decision and overruling the vendees' objections/supplemental objections reveal there are no factual findings as to the magistrate's calculation of the paid principal, nor is it evident from the record.

{¶44} In the finding of facts, the magistrate found Mr. Sood agreed at the hearing that $39,198.52 of the principal was paid while simultaneously noting he filed a supplemental exhibit with the two missing payments (June and July 2019). This exhibit reflected that $38,389.18 of the principal was paid (both sums do not account for the additional January 3, 2022, payment). The magistrate never made a factual finding as to the amount of principal the vendees actually paid or set forth the calculation. Further, the magistrate never determined whether the additional payment applied under the terms of the contract. The magistrate's conclusion simply stated, "I therefore find, at best, there was only (1) extra payment and even crediting the [vendees] with $2000.00 off the principal for that payment, the amount does not come to the 20% threshold." In addition, in their subsequent objections to the magistrate's decision, the vendees asserted that the amount of paid principal was $39,198.52 and that there is an additional, unaccounted for payment of $350.

13

**{¶45}** Most fundamentally, all three of these sums result in a variance of 18.59% to 20.12% (with the additional January 3, 2022, payment), and we cannot glean from the evidence in the record which of Mr. Sood's numbers the magistrate found credible. Nor does a review of the trial court's judgment entry overruling the vendees' objections/supplemental objections offer any insight. Although the court stated it conducted an "independent review," it was silent as to any of the issues the vendees raised and failed to address any of the vendees' objections to the magistrate's calculations. Thus, we cannot find the manifest weight of the evidence supports the trial court's judgment since we cannot review it from the record. *See Reamensnyder v. Marino*, 2018-Ohio-5336, 127 N.E.3d 340, ¶ 10 (11th Dist.) (finding trial court's judgment adopting the magistrate's decision was against the manifest weight of the evidence because the record did not contain sufficient grounds to justify the magistrate's decision and the trial court did not review any additional evidence); *Singer Steel Co. v. H & J Tool & Die Co., Inc.*, 11th Dist. Portage No. 2002-P-0135, 2004-Ohio-5007, ¶ 22-37 (evidence in the record did not support the magistrate's findings); *Nieto v. Marcellino*, 11th Dist. Geauga No. 2017-G-0146, 2018-Ohio-4952, ¶ 20 (trial court erred as a matter of law in adopting magistrate's award of damages because the magistrate failed to make a factual finding in the magistrate's decision).

**{¶46}** Since the 20% issue is the linchpin to resolving this case, and we cannot ascertain the amount of paid principal (and the magistrate's calculation) from the record, we reverse and remand for the trial court to conduct an independent, de novo review of the magistrate's decision and the vendees' objections/supplemental objections and to take additional evidence, if necessary.

14

{¶47} Pursuant to our holding in the second assignment of error, the remaining assignments of error are moot.

{¶48} The judgment of the Warren Municipal Court is reversed and remanded in accordance with this opinion.

JOHN J. EKLUND, P.J.,

EUGENE A. LUCCI, J.,

concur.

Case No. 2023-T-0022